**MILLERS' INDEMNITY UNDERWRITERS v. HELLER. (No. 6610.)**

(Court of Civil Appeals of Texas. Austin. May 30, 1923. Rehearing Denied June 27, 1923.)

**1. Master and servant ⬅373—Blood poisoning held compensable as "injury in course of employment."**

Where a cotton oil mill employee, engaging in horseplay, punctured his finger on a pencil, his subsequent injury by getting septic germs into the wound while pushing dirty cotton seed into a conveyor with his hands, causing blood poisoning, requiring amputation of his arm, was compensable as an "injury in the course of employment," within the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Course of Employment.]

**2. Master and servant ⬅405(4)—Evidence held to show compensable injury by blood poisoning.**

In a suit by an insurer to set aside an award of compensation for the loss of an arm from blood poisoning, suffered by an employee who punctured his finger on a pencil while engaged in horseplay, evidence *held* sufficient to show that the infection was caused by septic germs getting into the wound while working with his hands in dirty cotton seed, so as to entitle him to compensation for injury in the course of his employment.

**3. Master and servant ⬅405(1)—Proof of timely claim for compensation held sufficient.**

Where it is shown that a claim was filed and that an award of compensation was made within four months after the date of the injury, and the insurer, appealing from the award, alleged in its petition the fact of the award and the date thereof, which was within six months after the date of the injury, it is sufficient proof that the claim was filed within six months, as required by law.

**4. Master and servant ⬅401—Allegation of compensation insurance held sufficient.**

In a suit by an insurer against an employee to set aside an award of compensation, an answer alleging that plaintiff at the time of the injury had insured defendant's employer against liabilities for personal injuries to employees, and that it undertook for a valuable consideration to pay all damages for personal injuries received by such employees, and that it subrogated itself to all rights and liabilities under the Employers' Liability Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), was sufficient to charge that the insurer had insured the employer at date of the injury.

**5. Pleading ⬅381(3)—Allegation of contract of insurance and notice to produce held sufficient to admit it in evidence.**

In a suit by an insurer against an employee to set aside an award for personal injuries, in which the answer alleged that plaintiff insured the employer at the time of the injury, a notice by defendant that, unless plaintiff produced the original or a certified copy of the contract of insurance, secondary evidence would be used to prove it, was sufficient to require the production of the contract of insurance and to admit it in evidence.

Appeal from District Court, Milam County; John Watson, Judge.

Proceeding under the Workmen's Compensation Act by William Heller for compensation for personal injuries, opposed by the Cameron Cotton Oil Mill, employer, and the Millers' Indemnity Underwriters, insurer. An award of compensation was made by the Industrial Accident Board, and the insurer sued to set it aside. From a judgment for the employee, the insurer appeals. Affirmed.

E. C. Gaines, of Austin, for appellant.
U. S. Hearrell, of Cameron, for appellee.

Statement.

BLAIR, J. This suit was brought by appellant, Millers' Indemnity Underwriters, against appellee, Wm. Heller, to set aside an award made by the Industrial Accident Board of Texas, of $6.92 a week for 200 weeks, for the loss of an arm by appellee

while he was employed by the Cameron County Oil Mill, which oil mill was insured by appellant, under the provisions of the Workmen's Compensation Act of Texas (Vermon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz). Without stating the pleadings in detail, we find that the following issues were made thereby:

(1) That the accident occurred before the employee went to work.

(2) That the accident occurred while he was engaged in horseplay.

(3) That the evidence failed to show that the infection was received in the course of employment.

(4) That the claim to the Industrial Accident Board for compensation was not made within 6 months after the injury.

(5) That the petition was insufficient, in that it failed to allege that a policy written by the appellant was in force at the time.

(6) That the petition failed to allege that the policy was one for compensation, or a compensation policy.

(7) That the petition insufficiently described the policy to such an extent that it was error to admit evidence thereof.

The case was tried before the court without a jury, and the court rendered judgment in favor of appellee for 200 weeks' compensation, at $6.92 a week, and, appellant's motion for a new trial being overruled, the case is duly presented for our review, upon the propositions of law assigned as error.

### Findings of Fact.

The record in this case contains a statement of facts, also the trial judge before whom the case was tried made a special finding of facts, upon the request of appellant. The proof showed: That, on the 27th day of July, 1921, William Heller, the appellee, was employed by the Cameron Cotton Oil Mill to feed cotton seed into a conveyer or auger, and on this day he received an injury. That on the date of his injury, while so employed, the Cameron Cotton Oil Mill, employer, was a "subscriber" to the Texas Employers' Insurance Association, and the appellant had issued its policy to said employer, insuring it against liability for damages occasioned by personal injury to any of its employees. This policy so issued by appellant was in full force and effect at the time appellee was injured, and was written under the provisions of the Workmen's Compensation Act of Texas. That the compensation for injury to said employees, under the terms of the contract, written by appellant for a valueable consideration, was to be paid as required by the Employers' Liability Act of Texas, and by its terms released the employer from liability for damages as provided by said act, in the event of injury in the course of employment of any of its employees.

Appellee's hours of labor began at 7 p. m. and ended at 7 a. m. Late in the afternoon of July 27, 1921, while appellee was on his way from his home to the place where he worked, he went to a general merchandise store or commissary, which was operated by his employer, the Cameron Cotton Oil Mill, and was located on the premises and just across the railroad track from where appellee was to work, for the purpose of purchasing a bar of soap. The store or commissary was principally established for the employees of the Cameron County Oil Mill, but the public could buy merchandise, if they wished to do so. The manager of the store stated that generally the employees came by and purchased soap in the evening, which was to be used in taking a bath upon the following morning, when they were through with their work; but there was no testimony that it was to be used for this purpose in the instant case. After purchasing the soap, which was immediately before 7 o'clock, and immediately before he was to commence his work, the defendant saw a Mexican, whom he was to relieve in feeding the conveyer, come to the door of the seed house, and, thinking that he was about to quit work, started in a hurry out of the store, as it was his duty to be there and relieve him in order that the auger would not become choked. Just at this time the manager of said store, Mr. Harvey, was standing in the doorway, and to get him out of the way, the appellee, not in anger, merely slapped or pushed Harvey, and in so doing struck the middle finger of his right hand on a cedar pencil in the shirt pocket of Harvey, which produced a puncture or abrasion of about one-eighth of an inch in length, and down to the periosteum, or the bone covering. The injury was trifling, and was not dressed or covered at the time. Appellee walked immediately from the store to the mill, which consumed only a minute or two, and went to work feeding the conveyer, which was his duty under his employment. In the performance of his duties, it was necessary to shove or push the cotton seed into the conveyer or auger with his hands, and the cotton seed which he was handling on this occasion was very dusty, musty, and caked. In about 40 minutes, or an hour, after he commenced work, the wound gave him some pain, and he went back to the store or commissary and had Harvey put turpentine on the wound and wrap it in some kind of cloth. In about 40 minutes thereafter, the wound pained defendant so that to relieve it he went to the engine room of the oil mill, where he was working, and soaked his finger some 20 minutes in kerosene oil, which seemed to relieve it, and he again returned to his work of feeding the conveyer, and remained there until about 12 o'clock, when the pain became so intense that he had to quit work. Appellee called some time about 3

o'clock at a doctor's residence, but the doctor, having no electric lights, told him to come back early in the morning, and he would dress his finger.

On the following morning appellee called at the office of another doctor, who laid open the wound and found therein much dust and dirt, and evidences of lint off of cotton seed, but did not find any evidence of a lead pencil. Septic or poisonous germs were found to have gotten into the wound, and septicæmia or blood poisoning had set up to such an extent that it became necessary, in a day or two, to amputate the finger, in an effort to get behind the poisoning. A few days thereafter it became necessary to amputate the arm above the elbow, also in an effort to get back of the poisoning, which was successful. The trial judge found that the appellee received the septic or poisonous germ producing septicæmia, or blood poisoning, necessitating the amputation of his finger and arm, while working with his hand in the cotton seed, in feeding the seed conveyer, and in the course of his employment.

Appellee was earning and capable of earning $14 per week at the time of the injury, and under the terms of the policy was entitled to receive $6.92 per week for 200 weeks as compensation for his injury. A claim was filed with the Industrial Accident Board by appellee for compensation for his injury within 6 months from the date thereof.

## Opinion.

By its first and second propositions, the appellant contends that the injury to appellee occurred at a time when he was not in the course of his employment, and that at the time he received the injury he was engaged in practical joking or horseplay, which was the cause of the injury, and by reason thereof was not entitled to the benefit of an insurance policy, written under and by virtue of the Employers' Liability Act, which only authorizes a recovery for "injuries sustained in the course of the employment," as including "all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere."

We are of the opinion that it is not necessary to a decision in this case to pass upon these propositions, as the judgment of the trial court was based upon the proposition that the injury was caused by getting a septic or poisonous germ into the wound, from the dirty and musty cotton seed which appellee was required to push and shove into the conveyer with his hands, resulting in blood poisoning or septicæmia, requiring his arm to be amputated to get behind the poisoning, and that the injury was therefore not the scratch or abrasion, but the infection received in the wound while appellee was engaged in the course of his employment. We will only discuss the questions raised by these propositions in so far as they may be necessary under the other propositions of law submitted.

By its third proposition, appellant contends that, even though it be held that the law would allow compensation for an injury received outside the course of employment, or while the injured employee is engaged in practical joking, or what is termed as "horseplay," when the injury is later shown to have become infected in the course of employment, still the court should have rendered judgment for it in this case, because the appellee failed to meet and discharge the burden cast upon him, and show, by a preponderance of the evidence, that the infection came from the cotton seed; appellant contending that it was a moral impossibility to locate the source of an infection.

Aside from the question raised by the first proposition that the injury did not arise in the course of the employment, we are confronted with the question raised by both the first and third propositions: Did appellee receive his injury and the infection at the very time the pencil entered and made the scratch or abrasion, or later, when he was working with his hands in the dirty, musty cotton seed, with the wound caused by the pencil uncovered?

We have examined the English and German compensation statutes, as well as the statutes of the several states enacting such, but find no parallel case, and we are frank to admit that the decisions based upon the statutes mentioned above are apparently as conflicting as the number involved. This is due to the fact that no two of the statutes are alike, although similar, and to the further fact that no two cases present the same statement of facts; but from these decisions it seems to be the universal holding of courts that each case of this character must be determined by its own facts and circumstances.

Many respectable authorities hold that disease, occasioned by an accident, is a "personal injury," and that the accident is regarded as the proximate cause; but these authorities, so far as we can ascertain, are based upon statutes which require the injury to be by accident before a recovery can be had, and this distinguishes them from our statute, which only requires the injury to happen within the course of employment, whether by accident or not, with certain exceptions not involved in this case. Corpus Juris, treatise on Workmen's Compensation Acts, p. 65, § 55, notes 27, 28, 29, and cases cited.

[1] This same authority and others also hold that diseases which are compensable

under these acts are divided into two classes —the idiopathic and the traumatic diseases. Idiopathic diseases are those which develop gradually, or at least imperceptibly, and, while they may be attributable to external conditions, are also dependent, in part, on conditions inherent to the individual. A traumatic disease is one which is caused by physical injury. Id. note 32, and cases cited. In traumatic cases, the employee has usually been required to prove the time when and the place where the injury or accident occurred. Id. note 33; also see Honnold on Workmen's Compensation, §§ 97 and 98, pp. 298–309, and cases cited.

It has also been held that many diseases are distinguishable from occupational diseases, and are compensable as personal injuries. Sunstroke, though a disease, has been held as compensable as an injury. Physical contact with poison ivy, which later became infected by the breaking open of the blebs or blisters, causing the system to become poisoned and infected, resulting in death, has been held compensable under these statutes as injury in the course of employment. Drinking water furnished by the employer, which produced typhoid fever, has been held compensable as a physical injury received in the course of employment. It has also been held that where the bacillus of anthrax alights on a wool sorter's eye, and he dies from the disease, it is compensable as a "personal injury" received in the course of his employment. The latter case is one arising under the English act of 1897. In Higgins v. Campbell, 1 K. B. 328, affirmed A. C. 230, it was held that one particular anthrax germ striking a wool comber in the eye, the proof showing that the sheep from which it was taken were infected with anthrax, was a personal injury arising out of and in the course of employment and by accident; therefore compensable under the Workmen's Act. It was treated as if a spark from an anvil hit the eye, the court using the following language:

"It was an accident that the thing struck the man on a delicate and tender spot, in the corner of his eye."

See section 98, note 78, Honnold on Workmen's Compensation, and cases cited.

It has also been held that, where medical evidence showed that the applicant's falling of the womb was directly caused by straining and heavy lifting done in the course of her employment, no disease being present, though the injury was made possible by laceration at the time of the birth of a child 30 years before, that the injury was caused by the accident and compensable. Loustalet v. Metropolitan Laundry Co., 1 Cal. I. A. C. Dec. 318; Naud v. King Sewing Machine Co., 95 Misc. Rep. 676, 159 N. Y. Supp. 910.

It has also been held that physical injuries which aggravate a previous ailment or injury, so as to disable the employee, where the injury would not have been caused, but for the previous ailment or injury, is an injury within the course of employment, such as brass poisoning, which aggravates a previous injury or ailment. Honnold on Workmen's Compensation, vol. 1, p. 306, and cases cited.

Thus it will be seen that diseases resulting as the natural and probable consequence of an injury, or such as are traceable to the injury received in the course of employment, although the injuries themselves are trifling or minor in their nature, are compensable under Workmen's Compensation Acts similar to our own, as well as injuries received outside of employment, which are aided by a later injury received in the course of employment, although it would not have happened, but for the previous injury; the latter cases being based upon the reasoning that the employer accepts the employee as he is, whether physically sound or unsound. In such cases, it is only necessary to show that the actual injury occurred in the course of employment, though it would not have happened, except that it was aided by the former injury or ailment.

We have quoted at length from the authorities from other states, because we find the case at bar to be one of first impression in this state. The trial court having found that appellee received his injury in the course of his employment, by reason of having received the septic or poisonous germ into the wound in his finger while engaged in pushing and shoving the cotton seed into the conveyer, it becomes necessary only for him to show, by a preponderance of the evidence, that the germ was so received while so engaged.

[2] There were four doctors who testified, for appellant, that in their opinion the poisonous or septic germ most likely got into the wound at the time the pencil entered, or at the time of the abrasion or puncture of the finger, while four other physicians testified that in their opinion the septic germ or poisonous germ causing the blood poisoning most likely got into the wound after appellee commenced his work in shoving into the conveyer the cotton seed with his hand; the proof showing that the seed was very dusty and musty at the time. All the medical men agreed that the entry of the septic or poisonous germ into appellee's finger was the proximate cause of his injury, and not the abrasion or scratch from the pencil at the time it entered, although the injury would not have happened, had it not been for the previous scratch or abrasion.

Appellee further discharged the burden requiring him to show, by a preponderance of the evidence, that the germ got into his finger while engaged in pushing the cotton seed into the conveyer, by showing, by the

physician who laid open the wound on the morning after the injury, that dust and dirt and evidence of lint cotton from cotton seed were found deep down in the wound, and by further showing that the cotton seed was dusty, musty, and caked at the time. This testimony might not appeal to the highly technical medical man, who requires proof positive before he would like to make a statement; but the laity, or men of common knowledge concerning these matters, would be more readily convinced that the germ was most likely to have gotten into the wound while appellee was handling dusty and dirty cotton seed, this being based upon the reasoning and medical advice that dusty, dirty, and decaying cotton seed harbors and breeds millions of septic germs, while the opportunity for a septic germ to be on the point of a pencil would not be so great.

His case is further aided by the testimony that the septic germ got into his finger while working in the cotton seed, by the opportunity given such germs to do so, caused by the wound bleeding and opening and closing with pressure while pushing the cotton seed into the conveyer. We therefore conclude that appellee has made his case, and is entitled to recover herein, having discharged that burden of proof upon him, by showing that the injury received was the septic germ getting into the wound which he got while handling the cotton seed, in the course of his employment. We can see no material distinction between an injury caused by an anthrax germ striking an employee in a tender spot in the corner of the eye, and a poisonous or septic germ striking an employee in a tender place on his finger, caused by a scratch or an abrasion thereon.

[3] We do not sustain appellant's third and fourth propositions, which raise the question of the insufficiency of the testimony as to the claim having been filed with the Industrial Accident Board within 6 months after the injury occurred. The appellant filed no special plea attacking the jurisdiction of the court because the claim had not been filed within 6 months after the injury had occurred, but relied upon his general denial to make the issue. He also objected to the oral testimony of appellee's attorney that he filed the claim within the 6 months allowed by law. The proof of this issue is sufficient. The original claim for compensation, filed with the Industrial Accident Board, was not introduced in evidence, neither was a certified copy thereof offered in evidence; but the attorney for appellee testified, over the objection of appellant, that he filed said claim, and that an award was made thereon within 6 months after the injury. Appellee, on cross-examination, testified without objection, that:

"I filed a claim before the Industrial Accident Board for this claim, in which I recited the facts of the case."

Appellant pleaded, and appellee admitted the fact by his answer, that this suit was for the purpose of setting aside an award made by the Industrial Accident Board, of date October 27, 1921. The trial court found that the injury to appellee was sustained on the 27th of July, 1921, just 4 months preceding the date of the award by the board; so we have from the record the positive date of the injury, positive testimony that the claim was filed before the Industrial Accident Board, and we have an allegation by appellant that the Industrial Accident Board made an award upon such claim within 6 months after the injury occurred. We are therefore of the opinion that, where it is shown that a claim is filed with the Industrial Accident Board, and that an award was made upon such claim, within 4 months after the date of the injury, from which award an appeal was taken, and the party appealing from the award alleged in its petition the fact of the award and the date thereof, which was within 6 months after the date of the injury, it is sufficient proof that the claim had been filed within 6 months, as required by law, with the Industrial Accident Board of this state. The assignment is therefore overruled.

[4] Appellant's sixth and seventh propositions complain of the action of the trial court in failing to sustain its general demurrer and special exception to appellee's answer on the ground that it did not allege that it had a policy of insurance in force and effect with appellee's employer at the time of the injury. The answer alleged the date of the injury to appellee; that he was employed by the Cameron Cotton Oil Mill, at which time it was a subscriber to the Texas Employers' Insurance Association of Texas; that appellant at said time had insured the said Cameron Cotton Oil Mill by written contract against all liabilities for personal injuries to employees which might be received by them in the course of their employment; that it undertook, under the provisions and conditions of the said Employers' Liability Act, for a valuable consideration, to pay all the damages for personal injuries received by such laborers and employees, and that appellant thereby became bound to do so; and that it thereby subrogated itself to all the rights and liabilities, etc., of said Employers' Liability Act as provided in said act. The allegations in this answer are, in our opinion, sufficient to charge that appellant had insured the Cameron Cotton Oil Mill, at the time of this injury.

[5] Appellant's eighth proposition complains that the answer of appellee insufficiently described the insurance contract sought to be enforced, so as to identify it for the purpose of offering it in evidence. In addition to the allegations of appellee's answer, set forth in our opinion herein under appellant's sixth and seventh propositions, the ap-

pellee gave notice that, unless appellant produced the original or certified copy of its contract and agreement to insure the Cameron Cotton Oil Mill against injuries received by its employees, under the provisions of said Employers' Liability Act, secondary evidence would be used to prove the same. We are of the opinion that this is sufficient allegation to require appellant to produce any written contract it may have had with the Cameron Cotton Oil Mill to insure its employees on the date in question, and to admit such contract after its production in evidence. The assignment is overruled.

We find no error in the record of sufficient merit to reverse this case, and it is affirmed.

Affirmed.