CECIL BOOKER *v.* STATE COMPENSATION COMMISSIONER *et al.*

(No. 7591)

Submitted May 9, 1933. Decided May 16, 1933.

*Hubard & Bacon,* for appellant.

*Homer A. Holt,* Attorney General, and *Kenneth E. Hines,* Assistant Attorney General, for respondents.

MAXWELL, PRESIDENT:

Claimant obtained an appeal from an order of the compensation commissioner refusing him compensation on the ground that his injury was not received in the course of and resulting from his employment as a coal loader in a mine of the Newlyn Coal Company.

About 2:30 p. m., March 18, 1931, an electric motor ran over claimant's left leg necessitating amputation six inches below the knee. A few minutes before he was injured he fired a shot of powder to break the face of the seam where he was working. He walked about forty feet to the entrance of his room to wait until the smoke and fumes generated by the shot should settle. This action was necessary because of the absence of ventilating fans in the mine.

While claimant was waiting near the junction of the main track, which traversed the haulway or main entry of the mine, and the side track which entered his room, a motor approached pushing two empty cars. The motorman, at the rear, and the brakeman, riding the front of the foremost car, each had a lamp burning on his cap. The motor was running in reverse. A light on the motor reflected to the rear. The motor slowed down as it neared the switch leading into claimant's room, and the brakeman jumped off the car and threw the switch, thereby turning the cars onto the side track. The motorman testified that the motor also entered the side track, but this was denied by the brakeman. After the cars had been placed, the brakeman again threw the switch and the motorman continued up the track with the motor for about twenty feet (according to the estimate of several witnesses) where it ran over claimant's leg.

Claimant admitted that he heard the motor at the switch and saw the brakeman's light, but made no effort to get out of the way of the motor because he thought it would enter his room, as he said was the custom, before continuing up the track. He contends, however, that the motor merely "kicked" the cars into his room without entering the side track; that at the point where the accident occurred the slate and other refuse had been placed so close to the side of the track that he was unable to get out of the way of the motor; that he saw no lights on the motor and did not know it had passed the switch until it struck him. The superintendent of the coal company stated that the mine had been inspected and approved by a mining inspector about thirty days before the accident, and denied the existence of an obstruction on the side of the track where claimant was injured.

On June 17th following, claimant told an inspector of the

department making an ex-parte investigation of the accident, that the motor struck him in the room where he was working. Later, on July 29th, when confronted by the inspector with statements of other witnesses that he was injured in the haulway, he admitted that he had misstated the place of injury in his former statement. Gus Winbush, who was working approximately sixty feet from where claimant was struck, told the inspector that he saw claimant "setting against the gob with his feet down over the track" just a few minutes before the accident; and that he admonished claimant to "get out of there before you get mashed up with the motor." At the hearing before the commissioner claimant denied admitting he was mistaken as to the place he was struck; and Winbush, while admitting he saw claimant sitting on the "gob", denied telling him he should move before he "got mashed up with the motor."

The approach of the motor could be heard from one hundred and fifty to three hundred feet, but the evidence is conflicting as to the distance the light on the motor could be seen. The evidence is also conflicting as to the density of smoke in the main entry at the time of the accident; however, the motorman testified at the hearing that, from the entrance to claimant's room, he could see lights at the face of the main entry where Winbush was working.

The record does not disclose any appreciable evidence supporting the theory that the claimant was sleeping or loafing upon the track when he was struck by the motor. That is a matter of conjecture merely. It is not denied that in order to obtain air it was necessary for him to stay away from his working place for several minutes after shooting down coal. Although his reason for being away from his place of work was primarily personal, and was not an act of service to his employer, yet it contributed to the furtherance of his work and was therefore incidental to his employment. An injury so received must be deemed to have arisen in the course of employment. "Acts of ministration by a servant unto himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold and numerous others, readily conceivable, performance of which, while at work, are reasonably necessary to his health and comfort, are incidents

of his employment and acts of service therein, within the meaning of the Workmen's Compensation Act, though, in a sense, they are personal to himself and only remotely and indirectly conducive to the object of the employment; and an accidental injury sustained in the performance of such an act is compensable under said statute, as one incurred in the course of the employment and resulting therefrom." *Archibald* v. *Compensation Commissioner*, 77 W. Va. 448, 87 S. E. 791.

While we are impressed that claimant acted imprudently in selecting a hazardous place in which to wait until he could resume his work, it cannot reasonably be said that his carelessness or negligence amounted to willful misconduct barring relief. "Mere negligence or carelessness of an employee causing his death or injury does not preclude right of compensation under said statute." *Archibald* v. *Compensation Commissioner, supra.*

Claimant's misstatement that he was injured in the room where he was working and not in the haulway should not preclude his being awarded compensation. He is an illiterate negro boy. Reasonable allowance must be made for his instability.

The finding of the commissioner will therefore be reversed and the case remanded.

*Reversed and remanded.*