No. 36,558

Byron W. Neal, *Appellant,* v. Boeing Airplane Company and Liberty Mutual Insurance Company, *Appellees.*

(167 P. 2d 643)

Opinion filed April 6, 1946.

*Carl I. Winsor,* of Wichita, argued the cause, and *Harlin E. Bond* and *Rupert Teall,* both of Wichita, were on the briefs for the appellant.

*John F. Eberhardt,* of Wichita, argued the cause, and *Robert C. Foulston, George Siefkin, Samuel E. Bartlett, George B. Powers, Carl T. Smith, Stuart R. Carter* and *Thomas E. Woods,* all of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

Hoch, J.: The question presented by this appeal is whether an injury to an employee suffered as a result of a sportive act or "horseplay" in which he was indulging, is compensable under the workmen's compensation act. · The commissioner and the district court upon appeal denied compensation on the ground that the injury did not arise out of the employment. The claimant appeals.

We are not here dealing with any question of controverted fact. At the hearing before the commissioner there was some conflict

of testimony as to the circumstances under which the injury took place, but this conflict was resolved against the claimant by the commissioner and the commissioner's finding was affirmed by the district court. The finding of fact is conclusive here since it is not our function to weigh conflicting evidence. (G. S. 1935, 44-556; *Goss v. McJunkin Flying Service*, 157 Kan. 684, 143 P. 2d 659; *Scott v. Kansas Western Pipe Line Co.*, 158 Kan. 160, 146 P. 2d 366.) Appellant concedes this to be true and rests his case entirely upon the contention that an injury resulting from horseplay indulged in under circumstances of employment here existing should be held to be one "arising out of" the employment, and therefore compensable under the act.

Appellant was employed as an "expediter" by the respondent, his duties being to see that the flow of production through his department was kept moving. At a time when apparently there was a lull in the work, some of the employees, including appellant, engaged in the pastime of attempting to lift and raise above their heads a large roll of waxed paper which was standing in the aisle of the department. There was some wagering among them as to whether they could perform the feat. While the appellant had the roll of paper balanced upon one hand and was attempting to raise it above his head, it slipped and fell against his neck causing the injury of which he now complains. Appellant does not contend that this horseplay had been a matter of common practice or that the employer had any knowledge concerning it or had in any way acquiesced in it. On the contrary, the only testimony here shown upon the point is that of the assistant foreman in charge of that department, who testified that on the day before the accident happened he saw two or three employees attempt to lift the paper and told them it was too heavy to lift, and to leave it alone or they would get hurt. Appellant says that one of the employees who had engaged in the sport testified that he had played with this roll of paper on occasions before and that "there were no certain rules against playing with rolls of paper."

The workmen's compensation act covers only personal injuries "by accident arising out of and in the course of employment." (G. S. 1935, 44-501.) We have repeatedly held that the phrase "arising out of" implies some casual connection between the accidental injury and the employment. (*Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 200, 34 P. 2d 542.) "If the injury did not result directly from performance of the work for which the workman was

employed, it must at least have been suffered while performing some act which was normally and commonly incident to such work." (*Brandon v. Lozier-Broderick & Gordon*, 160 Kan. 506, 509, 163 P. 2d 384.) The burden is upon the claimant to show that the injury was one "arising out of" the employment. (*Jones v. Lozier-Broderick & Gordon*, 160 Kan. 191, 195, 160 P. 2d 932; *McMillan v. Kansas Power & Light Co.*, 157 Kan. 385, 139 P. 2d 854.)

On this record it is unnecessary to examine the cases in which the employee was injured as the result of sportive acts or horseplay commonly indulged in by other employees with the knowledge and acquiescence of the employer, but in which he was not a participant. Appellant concedes that most of the "older" cases have held that the claimant could not recover where he was a participant in the horseplay which resulted in the injury, and that in some cases recovery has been denied even where he was not a participant but was the innocent victim of the horseplay of fellow employees.

Appellant's contention is that there is a "modern trend," which should be followed, away from the old rule which denied recovery where the claimant's own act of horseplay resulted in injury. He argues that the stresses and strains resulting from the close association of employees under conditions common to modern industry inevitably lead to pranks, to sportive acts or horseplay between them, and that the injuries resulting from such acts, even by a participant, should be regarded as one of the perils of the employment which the compensation act was intended to cover. Whatever persuasion there may be in that argument, it is one to be addressed to the legislature and not to the court, in view of the construction repeatedly and consistently given to the act.

We find no decision of this court allowing compensation in a case in which the claimant was injured as the result of some play or sportive act of his own. Indeed, compensation has been denied even where the injured employee was not a participant unless it has been shown that the horseplay or dangerous practice on the part of the employee had become a customary thing known to and acquiesced in by the employer.

A few typical quotations from Kansas cases will suffice. In *White v. Stock Yards Co.*, 104 Kan. 90, 177 Pac. 522, it was said:

"It has also been held that while ordinarily a master is not liable under the compensation act for injuries to a workman which have been caused through the mischievous pranks and sportive jokes of his coemployees, yet the rule is otherwise *where the master has knowingly permitted such mischievous pranks*

*to continue.* In such cases, the danger of injury becomes an incident of the employment." (Italics supplied.) (p. 91.)

From *Thomas v. Manufacturing Co.,* 104 Kan. 432, 179 Pac. 372, 6 A. L. R. 1145:

"If the present case is to be taken out of the general rule it must be upon the ground that the habit of the girl employees to play with the trucks during the noon intermission, *with the knowledge and express consent of the foreman, and without objection by anyone representing the defendant, made such practice one of the conditions under which the business was carried on,* upon much the same principle as employers are held liable for the results of horseplay which has grown into a custom." (Italics supplied.) (p. 437.)

The opinions in the Stock Yards Co. and Manufacturing Co. cases, *supra,* cited *Stuart v. Kansas City,* 102 Kan. 307, 171 Pac. 913, wherein it was said:

"Under these authorities the rule is that *where a workman, known by his master to be in the habit of indulging in dangerous play* with his fellow workmen, *is retained in the master's employ,* the danger of injury from such play becomes an incident of the employment of the other workmen, and injury to any of the other workmen, *while performing his regular work,* caused by such play, comes within the provisions of the workmen's compensation act." (Italics supplied.) (p. 310.)

(See, also, *Monson v. Battelle,* 102 Kan. 208, 170 Pac. 801; *Peavy v. Contracting Co.,* 112 Kan. 637, 211 Pac. 1113; *Covert v. John Morrell & Co.,* 138 Kan. 592, 27 P. 2d 553; *Finck v. Galloway,* 139 Kan. 173, 29 P. 2d 1091; *Addington v. Hall,* 160 Kan. 268, 160 P. 2d 649.)

The construction placed upon our statute is in harmony with the overwhelming weight of authority. (71 C. J. 681; 28 R. C. L. 811.) The latest annotation on the subject is found in 159 A. L. R. (1945) beginning at page 319, and supplementing prior annotations therein noted. The general rule of noncompensability is there again restated, citing many recent decisions from fifteen jurisdictions. Even from recent cases cited wherein compensation was allowed, the annotator makes the following deduction:

"Many of the later cases recognize that an exception should be made, and the right of compensation sustained, *where an employee who was injured through horseplay or fooling by other employees took no part in it, but was attending to his duties,* or endeavoring to do so, the general theory, although expressed in different ways, being that there is in such a case no such departure from duty by the injured employee as should bar him from recovery, and that such a contingency should in reality be considered as a risk or condition of the employment, being far different, at least in degree, from a case of voluntary participation or deliberate aggression." (Italics supplied.) (p. 325.)

Appellant supports his contention with a few cases from other jurisdictions. Some of them are readily distinguishable from the one before us and in any event they represent the view of a small minority. It is not necessary to lengthen this opinion by examining those cases.

From general textbook discussions, the appellant cites only a comment from 159 A. L. R. 319—from which we have already noted a restatement of the general rule—and a statement from Horovitz on Workmen's Compensation (1944). Examination of the two statements and their context affords little support for a departure from the general rule long adopted in this state. The statement cited from 159 A. L. R. is simply that:

> "*Several cases* have taken a somewhat advanced position with respect to the essential character and admitted frequency of ordinary horseplay in its relation to modern industrial conditions, *holding that not all conduct of this character,* although originating in some act of the injured employee, is to be considered as a departure from duty, or as penalizing him for all the consequences which may follow." (Italics supplied.) (p. 332.)

The statement quoted from the textbook by Horovitz is:

> "The more recent tendency is to allow an award without regard as to who was the immediate aggressor [in horseplay] where the injury is a by-product of associating men in close contacts, recognizing the 'strains and fatigue from human and mechanical impacts.'" (p. 112.)

But this was only part of the paragraph from which the quotation was taken. The statement had reference primarily to cases in which the injured workman was not a participant in the horseplay. The part of the paragraph immediately preceding the above quotation is as follows:

> "*Horseplay* or larking among employees is unfortunately too common. The use of the power hose and other means of 'goosing' has caused many injuries or deaths to innocent victims, as has the throwing of nails, apples and like objects by employees who think pranks 'funny.' Does not the placing of employees in close proximity increase the risk of injury and make the result compensable? Courts disagree, *the more liberal ones placing the burden on the offending industry, where the injured man is an innocent victim and does not take part in the horseplay.* The aggressor is usually denied recovery. Massachusetts denied recovery even to innocent victims, and finally came into line by statute in 1937." (Italics supplied.) (p. 110.)

It follows from what has been said that appellant's injury did not arise out of the employment.

The judgment is affirmed.