BOUCHARD ET AL.

*vs.*

SARGENT, INC., AND HARTFORD ACCIDENT
INDEMNITY CO.

Kennebec.   Opinion, November 20, 1956.

*Gaston M. Dumais,*
*William D. Hathaway,* for petitioner.

*Francis Rocheleau,* for Insurance Company.

SITTING: WILLIAMSON, C. J., WEBBER, BELIVEAU, TAPLEY,
SULLIVAN, DUBORD, JJ.

WEBBER, J. This was an appeal from a *pro forma* decree of the Superior Court affirming a decision of the Industrial Accident Commission which dismissed appellants' petition for an award of compensation. The facts are not in dispute. On May 25, 1955, Alphie Bouchard, Jr. was employed as one of a crew engaged in cutting and burning brush in the vicinity of Winthrop. In order to reach the location of the work operation from Winthrop, the members of the crew customarily crossed a stream in boats borrowed by their employer from the owner and provided for that purpose. Just before noon on the day of the fatal accident, Bouchard left the work area, crossed the stream in one of the boats, and walked to Winthrop where he obtained a soft drink. The employees had no regular lunch hour, but no issue is raised as to the right and privilege to leave the work area at this time of day to procure refreshments. Bouchard returned to the stream and consumed his drink. While he was so engaged, he was joined by his foreman and together they started to return across the stream to the work location. At this point Bouchard suddenly decided to swim the stream although he was fully clothed. He waded into the stream and then returned to deposit his wallet and watch in the boat. He then waded upstream for some distance, stood on some tree roots, and dived into the water. He came to the surface, took another dive, and reappeared in midstream "hollering for help." The foreman was unable to swim and his efforts to rescue Bouchard were unsuccessful. Bouchard was drowned. Neither Bouchard nor any other employee had ever before engaged in swimming the stream.

On these facts the Commission determined that the accidental death did not arise out of or in the course of the employment and was not compensable.

For an accident to arise out of the employment there must be some condition, risk or hazard of the employment except for which the injury would not have occurred. "To

arise out of the employment the injury must have been due to a risk of the employment." *Boyce's Case,* 146 Me. 335 at 341; *Riley* v. *Oxford Paper Co. et al.,* 149 Me. 418. In other words, there must be a causal connection between the conditions under which the employee worked and the injury which he received. *Westman's Case,* 118 Me. 133; *Washburn's Case,* 123 Me. 402, 404. Where the accident arises out of an independent frolic or a bit of horseplay entered into by the employee and unrelated to his work, it has been held not to be compensable. *Washburn's Case, supra.* Where, however, there have been a series of incidents of such prankish conduct or activity so that it may be said that a custom or practice has grown up and become accepted, it has been held that such custom or practice becomes integrated into the climate of employment and becomes a risk or hazard under which the work is performed. *Petersen's Case,* 138 Me. 289; *Ognibene* v. *Rochester Manufacturing Co.,* 298 N. Y. 85, 80 N. E. (2nd) 749. That some types of horseplay will occur under some conditions of employment must perhaps be considered inevitable. However, where one deliberately and substantially steps outside of his employment to engage in a personal prank or frolic of his own, he has for the moment abandoned his work and the resulting accident cannot be said to arise out of or in the course of his employment. The New York court in *Davis* v. *Newsweek Magazine et al.,* 305 N. Y. 20, 110 N. E. (2nd) 406, a case involving death by drowning, held the swim for purely personal pleasure not to be "work-connected." In *Gaurin* v. *Bagley & Sewall Co.,* 298 N. Y. 511, 80 N. E. (2nd) 660, the court had no difficulty in determining that where an employee left his work of piling lumber on a river bank to engage in the prank of pushing an old wagon into the stream and in so doing was drowned, the accident did not arise out of or in the course of employment. See also Larson's Workmen's Compensation Law, Vol. 1, Page 365, Sec. 23.64.

We think that upon these facts the Commission was compelled to find as it did that this fatal accident was not compensable. The employee was under no direction or compulsion to swim the stream. A relatively safe and reasonable method of crossing the stream by boat had been provided by the employer and without exception had been used previously by the decedent and all other employees. There had been no previous incidents of swimming the stream which could give rise to any suggestion that any new or additional risk or hazard of employment had been added as a part of the work environment. The hazard here was of course that anyone who went swimming in the stream might drown. This hazard was common to all who came to the stream to swim. There was nothing about the employment which required or even contemplated that any employee would swim the stream. " 'The causative danger must be peculiar to the work, not common to the neighborhood.' " *Westman's Case, supra,* at 143; *Ferreri's Case,* 126 Me. 381 at 383. The unfortunate victim of this accident suddenly decided to engage in a frolic of his own. In so doing he substantially and deliberately abandoned his work and incurred a risk entirely disassociated from his employment.

The appellants place great emphasis on the fact that the employer's representative stood by and did nothing as the employee entered the stream. At the outset serious doubt arises as to whether there was any occasion for any action by the foreman. The employee was not engaged in the direct performance of his tasks. It is apparent that employees were permitted considerable latitude and relative freedom from control and discipline by the employer with respect to a lunch period. The employee apparently was not in violation of any of his employer's prohibitions if he sought some personal recreation at about this hour of the day. The risks were as obvious to one person as to another. In fact, the risks were slight to a relatively good swimmer. But in any event the real issue is not whether the employer through

his agent had knowledge of this particular act. Knowledge of the employer plays a part primarily as it tends to show that certain customs and practices have gained such acceptance as to become an incident of the employment. Mere knowledge of the very act for which compensation is now sought is not enough to make the injury compensable if the act, not otherwise compensable, is not part of a stream of similar incidents which create a hazard of employment. This theory of a chain of incidents actually underlies the result reached in such cases as *Petersen's Case, supra,* even though the language of the opinion seems to emphasize knowledge of the employer. In the realm of workmen's compensation we are not dealing with questions of negligence on the part of employers. The test is always whether or not the employee was injured as a result of a hazard of his employment. As was well stated by Mr. Justice Cardozo in *Leonbruno* v. *Champlain Silk Mills,* 229 N. Y. 470, 128 N. E. 711, 712: "The test of liability * * * is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk." It is necessary to distinguish the situation in which the employer impliedly authorizes a particular act which benefits the employer and is related to the employment. It is upon this basis that we distinguish *Pridgen* v. *Murphy,* 44 Ga. App. 147, 160 S. E. 701. In that case the employee was riding a horse to ascertain the suitability of the horse for the employer's work. The general manager stood by and offered no objection. The court held that this conduct of employer's agent was implied authorization to the employee to perform this service for the employer. Therefore the act of riding became a function of his employment and his resultant injury upon being thrown from the horse arose out of and in the course of that employment. Quite different is the situation where the employee, without objection on the part of his foreman, sub-

stantially departs from his employment and engages in a frolic of his own which is of no possible service or benefit to the employer and bears no relation whatever to the functions of his employment. In such a case the knowledge of the employer does nothing to make compensable an otherwise non-compensable injury.

We must conclude therefore, as did the Commission, that no risk or hazard of the employment caused the death of this employee and that the personal activity in which the employee was engaged at the time of his death was not in the course of his employment.

*Appeal dismissed.*

*Decree below affirmed.*