Anthony G. Shapaka

*v.*

State Compensation Commissioner and Wheeling Steel Corporation

(No. 12096)

Submitted April 11, 1961.     Decided May 16, 1961.

320

*Schmidt, Laas & Schrader, Thomas B. Miller,* for appellant.

*James M. Sprouse,* for appellee.

HAYMOND, PRESIDENT:

The claimant, Anthony G. Shapaka, sustained personal injuries on the night of May 8, 1960, at the plant of the Wheeling Steel Corporation at Beach Bottom, West Virginia, where he was employed in connection with the operation of a crushing machine, while walking from his working place to a water cooler located in another section of the plant at a distance of about fifty feet from his post of employment for the purpose of obtaining a drink of water. In going toward the cooler he used a passageway or aisle of the plant, on the floor of which was a quantity of resilient wire mesh approximately sixteen feet in length, seven and a half feet in width and about one foot in height. Though there were other aisles or passageways available for use in going to the water cooler the claimant and other employees customarily used this passageway which at times contained similar

quantities of wire mesh. After he had walked upon and over the mesh for a distance of about sixteen feet and had reached the end of the mesh he paused momentarily, jumped upward about two and a half feet and, in attempting to make a complete turn in the air in an upright position, fell on the floor of the passageway. As he descended he was facing the mesh, one of his feet was on the mesh and the other was on the floor; and in the fall that resulted he sustained the injuries to his back and his ankle for which he seeks compensation.

By order entered September 22, 1960, the state compensation commissioner held that the injuries of the claimant were received in the course of and resulted from his employment and were compensable. On January 18, 1961, the workmen's compensation appeal board affirmed the order of the commissioner. From that order this Court granted this appeal on February 20, 1961, upon the petition of the employer.

The employer contends that at the time of his injury the claimant was engaged in horseplay and as a result his injury was not received in the course of his employment and is not compensable.

The controlling question here involved has not been determined by any prior decision of this Court and may be regarded as a case of first impression in this jurisdiction. The question, however, has been considered by courts in other jurisdictions and the decisions on that point are varying in result and are in apparent conflict.

Whether an employee who engaged in conduct which may be characterized as horseplay sustains a compensable injury depends upon its relation to his employment. If the conduct of an employee which results in his injury constitutes a departure from or an abandonment of his employment the injury is not compensable; but if such conduct constitutes a mere deviation which is slight and not substantial it does not remove the employee from the course of his employ-

ment and does not render his injury not compensable. 99 C.J.S., Workmen's Compensation, Section 222.

In 58 Am. Jur., Workmen's Compensation, Section 211, the text contains these statements: "It has been stated that an accident arises out of the employment if it ensues from a risk reasonably incident to the employment, and if it is in some sense due to the employment. A test applied in some cases is that an injury arises out of the employment if the employment is one of the contributing causes without which the accident which actually happened would not have happened."

In Section 212 of the same title and volume there is this language: "* * *, it may be stated as a very general proposition that an injury occurs 'in the course of' the employment when it takes place within the period of employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto, or, as sometimes stated, where he is engaged in the furtherance of the employer's business. Conversely, a workman not engaged in performing the particular duties for which he was employed, or in something incidental thereto, is not in the course of his employment, even though he may be in the general sphere of it."

In 99 C.J.S., Workmen's Compensation, Section 222, these statements appear: "The legal effect of a deviation depends on the circumstances, the nature of the work and the terms of the employment being the most important circumstances. Many decisions turn on the extent of the deviation; a deviation which is slight and not substantial does not remove the employee from the course of his employment. A distinction is sometimes made between a momentary or impulsive act, and a deliberate and extensive excursion from the employment. The test of a deviation is not so much a matter of the time consumed and the distance traveled in departing from the most direct route, but of whether the employer's or the employee's purpose is served.

If the employee would have suffered the same injury had he not incidentally turned aside from his work, his turning aside is immaterial. There is no fixed rule to determine whether an act of an employee constitutes a departure from, or an abandonment of, his employment.''

The conduct of the claimant which resulted in his fall and accompanying injury occurred while he was engaged in the performance of a momentary or impulsive act did not constitute a deliberate and extensive excursion from his employment. If instead of jumping upward and endeavoring to make a complete turn while in an upright position he had merely tripped or stumbled and had fallen and in that manner sustained his injury while on his way to the cooler to obtain a drink of water it could not reasonably be asserted that his act in falling in that manner constituted a departure from his employment. Unquestionably the conduct of the claimant in going from his working place to the water cooler in another nearby section of the plant to get a drink of water occurred within the scope of his employment. *Booker v. State Compensation Commissioner*, 113 W. Va. 657, 169 S. E. 483; *Archibald v. Workmen's Compensation Commissioner*, 77 W. Va. 448, 87 S. E. 791, L.R.A. 1916D, 1013. In the opinion in the *Booker* case this Court used and approved this quotation of point 1 of the syllabus in the *Archibald* case: ''Acts of ministration by a servant unto himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold and numerous others, readily conceivable, performance of which, while at work, are reasonably necessary to his health and comfort, are incidents of his employment and acts of service therein, within the meaning of the Workmen's Compensation Act, though, in a sense, they are personal to himself and only remotely and indirectly conducive to the object of the employment; and an accidental injury sustained in the performance of such an act is compensable under said statute, as one incurred in the course of the employment and resulting

therefrom." It is also clear that the momentary and impulsive act of the claimant, while on his way from his place of work to the cooler in a nearby section of the plant to obtain a drink of water and his consequent fall and injury, did not remove him from his employment and that for that reason his injury was received in the course of and resulted from his employment.

Whether the conduct of the claimant in jumping and attempting to make a complete turn which resulted in his falling to the floor and consequent injury should or should not be considered as horseplay is not controlling in the disposition of his claim and need not be and is not determined in this proceeding. It is perhaps pertinent to observe that in many of the cases in which the act or conduct of an employee was regarded as horseplay he intended such act or conduct as a demonstration to be observed by some other person or persons or that he and some other person or persons to some extent participated in it or that other persons engaged in an act or conduct in his presence in which he did not actively participate. See Annotation 159 A.L.R. 319 to 340 and the many cases there cited and discussed. Though it has been said that horseplay "requires two or more participants," *Richardson v. J. Neils Lumber Company,* _____ Mont. _____, 341 P. 2d 900, the individual performance of a claimant in jumping over the hood of his automobile and receiving an injury in so acting has been regarded as horseplay. *Hawkins v. National Life and Accident Insurance Company,* 164 Tenn. 36, 46 S. W. 2d 65; Larson, The Law of Workmen's Compensation, Section 23.62(a), page 357 and Cumulative Supplement, page 130. The claimant in this proceeding, however, did not intend that his act of jumping and turning should be observed by any other persons. It was not done for that purpose and no other person contributed to or participated in it.

The general rule, supported by the weight of authority, is that no compensation is recoverable under the Workmen's Compensation Acts by an employee

for injuries sustained by him by horseplay which was engaged in independently of, disconnected with, or disassociated from the performance of any duty of the employment, for the reason that such injuries do not result from the employment, within the meaning of such acts, but are in substance and in their nature foreign to the character of the work and are not within any duty of the employee to the employer. Annotation 159 A.L.R. 319. See also *Claytor v. State Compensation Commissioner*, 144 W. Va. 103, 106 S. E. 2d 920. To the foregoing general rule, however, are these four well recognized exceptions: (1) Where horseplay was known to the employer who permitted it to continue without interference; (2) where the misuse of dangerous instruments was within the contemplation of the employer; (3) where participation in acts of horseplay contributed to the injury but was not the decisive factor; and (4) where there is an association of men in common work in crowded factories. A fifth exception has been said to exist where periods of forced inactivity or idleness during hours of employment is the responsible factor. Volume 6, Schneider's Workmen's Compensation, permanent edition, Chapter 27, Section 1609, Note 4, page 559, Sections 1612, 1613, 1614, 1615 and 1616. Even if the conduct of the claimant should be regarded as horseplay, it was not, under the undisputed evidence, the decisive factor which produced or caused his injury and, being within the third exception to the general rule, would not defeat his right to compensation under the provisions of Section 1, Article 4, Chapter 23, Code, 1931, as amended.

Some of the cases decided by appellate courts in other jurisdictions which support the view that the injuries received by the claimant are compensable under the Workmen's Compensation Law of this State are *Secor v. Penn Service Garage*, 35 N. J. Super. 59, 113 A. 2d 177; *Bennett's Case*, 140 Me. 49, 33 A. 2d 799; *Torosian v. Industrial Accident Commission of California*, 11 Cal. App. 2d 204, 53 P. 2d 384; *May Chevrolet Company v. Armstrong*, 82 Ind. App. 547, 146 N. E. 847;

*Millers' Indemnity Underwriters v. Heller* (Tex. Civ. App.) 253 S. W. 853; *Donovan v. Bush Terminal Company,* 255 App Div. 737, 6 N.Y.S. 2d 860; *East Ohio Gas Company v. Coe,* 42 Ohio App. 334, 182 N. E. 123; *Oldinsky v. The Philadelphia and Reading Coal and Iron Company,* 92 Pa. Super. 328.

In *Bennett's Case,* 140 Me. 49, 33 A. 2d 799, the employee, an active man in his forties, while hurrying to perform his part of his work, came down a ramp leading to a room to go to that part of the room where empty racks were to be placed upon a conveyor and, instead of going to the end of the ramp and around the side of it to the conveyor, vaulted a rail about three feet in height above the floor and in so doing fractured his right femur. There was no evidence that he had ever vaulted the rail before, or had ever seen any other employee do so, or that any instructions prohibiting such conduct had been issued by the employer. The court held that the injury received in that manner was compensable and in the opinion used this language: "The case at bar warrants the finding that the injured employee was hurrying to get from the treeing room to the lining and repairing room of the factory where he was employed by way of the ramp for the purpose of performing his regular duties. It was strictly within the scope of his employment to do this and, in the circumstances disclosed here, to do it expeditiously. It is true that he could have gone a few feet farther down to the ramp, turned around the end of the guard rail and with little delay and greater safety reached the place to which he was going, and to vault the rail may have been imprudent, perhaps negligent, but with its height of only three feet and a drop on the other side but little more, for a wiry, active man in his forties his conduct can not hardly be viewed as unreasonably reckless. We are of the opinion that in vaulting the rail the employee here acted imprudently but did not take himself out of the scope of his employment."

In *Secor v. Penn Service Garage,* 35 N. J. Super. 59, 113 A. 2d 177, it was held that the act of an em-

ployee, who had spilled gasoline on his clothes while filling a tank for his employer after being told to change his clothes, in holding a lighted match near them to demonstrate that he was not afraid of gasoline was momentary or impulsive, was not an extensive excursion from, but was in the course of, his employment, and that the injury he received was compensable. In the opinion the court said: "This doctrine, that a deviation in a certain limited measure does not take the employee out of the course of employment, is applicable not only to curiosity cases, horseplay and assaults, but also to foolhardy acts. In *Miles v. Gibbs & Hill, Inc.,* 250 N. Y. 590, 166 N. E. 335 (Ct. App. 1929), affirming 225 App. Div. 839, 232 N. Y. S. 818 (1929), a trackman, whose job it was to walk a railroad track, struck a torpedo on the track with a hammer he was carrying, causing an explosion; and recovery was a l l o w e d. * * * ."

Though it clearly appears from the record in this proceeding that the claimant in jumping and trying to make a complete turn was guilty of negligence which caused or contributed to his injury, negligence which does not amount to wilful misconduct does not defeat his right to compensation under the Workmen's Compensation Law of this State. *Thompson v. State Compensation Commissioner,* 133 W. Va. 95, 54 S. E. 2d 13; *McEwan v. State Compensation Commissioner,* 123 W. Va. 310, 14 S. E. 2d 914; *Booker v. State Compensation Commissioner,* 113 W. Va. 657, 169 S. E. 483; *Long Flame Coal Company v. State Compensation Commissioner,* 111 W. Va. 409, 163 S. E. 16; *Archibald v. Workmen's Compensation Commissioner,* 77 W. Va. 448, 87 S. E. 791, L.R.A. 1916D, 1013. In the *Archibald* case this Court held in point 3 of the syllabus that "Mere negligence or carelessness of an employee, causing his death or injury, does ot preclude right of compensation under said statute."

In support of its contention that the injury received by the claimant is not compensable, the employer cites and relies upon *DiLauro v. Bassetti,* 133 Conn. 642,

53 A. 2d 512; *Horn v. Broadway Garage,* 186 Okla. 535, 99 P. 2d 150; *Eagle-Picher Mining and Smelting Company v. Davison,* 192 Okla. 13, 132 P. 2d 937; *Neal v. Boeing Airplane Company,* 161 Kan. 322, 167 P. 2d 643, and *Bouchard v. H. E. Sargent, Inc.,* 152 Me. 207, 127 A. 2d 260, in each of which the injury sustained by the claimant was held to be not compensable. In each of the cited cases the facts differ materially from the undisputed facts here involved and for that reason those cases are distinguishable from and do not control the decision in this proceeding.

The order of the Workmen's Compensation Appeal Board affirming the order of the State Compensation Commissioner is affirmed.

*Affirmed.*