ROBERT L. GRANT, PETITIONER-RESPONDENT, v. GRANT CASKET CO., RESPONDENT-PROSECUTOR.

Submitted May 4, 1948—Decided August 9, 1948.

Before Justices BODINE and JACOBS.

For the petitioner-respondent, *A. Michael Lepore* (*Charles Wm. Kappes,* of counsel).

For the respondent-prosecutor, *Nugent & Rollenhagen* (*Frederick M. Rollenhagen,* of counsel).

The opinion of the court was delivered by

JACOBS, J.  This matter is before the court pursuant to a writ of *certiorari* to review a judgment of the Hudson County Court of Common Pleas reversing an order of dismissal entered by the Workmen's Compensation Bureau.

The petitioner-respondent, Robert L. Grant, was employed by the respondent-prosecutor, Grant Casket Co., as salesman and secretary.  His duties included the supervision of employees and the conduct of labor-management relations with union representatives.  On October 7th, 1940, he conferred with Fred Haanken, a vice-president of the union, with respect

to the proposed lay-off of a night man and the transfer of his duties to a day man. He left Haanken and proceeded to the upper floor where he was continuing discussion of the matter with Joe Giordano, the shop steward. He was followed by Haanken who, without warning, struck a blow on his right cheek which dazed him and caused him to seek medical attention. The medical examination indicated that he had sustained contusions of the cheek bone and a slight concussion of the brain. Thereafter he complained of headaches and dizziness and within the next year was treated on eleven occasions by Dr. Bender and on twenty-four occasions by Dr. Klein.

In January, 1941, the petitioner-respondent filed his claim for compensation in the Workmen's Compensation Bureau and hearings thereon were held in September and October, 1941. At the close of the petitioner-respondent's case, the Deputy Commissioner granted a motion to dismiss the petition on the ground that the petitioner had not sustained the burden of establishing that there had been an accident arising out of the employment. An appeal was thereupon taken to the Hudson County Court of Common Pleas and a hearing date was fixed by Common Pleas Judge Erwin. There was considerable delay, evidently due to Judge Erwin's illness and death, and in 1946, application was made to Common Pleas Judge Ziegener for an order remanding the case to the Workmen's Compensation Bureau for the taking of "additional proofs for the clarification of the record" and for an order fixing a date for the hearing of the appeal. This application was granted and additional proofs were taken before the Deputy Commissioner who found that his original judgment of November 7th, 1941, was *res judicata* and entered an order dated July 11th, 1946, dismissing the proceedings. This dismissal was reversed by the Court of Common Pleas with a finding in favor of the petitioner and directions that the Bureau fix the award to which the petitioner is entitled. The Deputy Commissioner then made an award of 5% of total which was increased by the Court of Common Pleas to 15% of total. Prosecutor thereupon obtained its writ of *certiorari* to review the judgment in the Court of Common Pleas award-

ing 15% total disability and in support of its writ urges the following:

1. That the action of the Court of Common Pleas in remanding the cause to the Bureau for the purpose of taking additional testimony was improper, and

2. That the evidence did not establish that there was an accident arising out of the employment which resulted in injuries to the petitioner-respondent entitling him to compensation in the amount allowed or in any amount.

## I.

The prosecutor acknowledges that the Court of Common Pleas has power to remand cases to the Bureau but contends that such power does not extend where, as here, the Bureau has made an express finding that the petitioner has not sustained the burden of establishing that the accident "arose out of the employment." We find no basis for such restriction either in reason or in the authorities. The Court of Common Pleas acts *de novo* on the record before the Bureau. Where, as here, it believes that, in the interests of a just determination, the record should be supplemented by additional testimony, there is no reason for denying it power to direct such action. See *Rubeo* v. *Arthur McMullen Co.* (*Court of Errors and Appeals*, 1937), 117 *N. J. L.* 574, 580, where the court said: "It was not error for the Court of Common Pleas to have remitted the cause to the Compensation Bureau for the latter to have taken additional proofs, to make a more specific finding and determination of the issues involved." See, also, *Ford Motor Co.* v. *National Labor Relations Board*, 305 *U. S.* 364, 373; 83 *L. Ed.* 221, 229 (1939), where Chief Justice Hughes pointed out that: "It is familiar appellate practice to remand causes for further proceedings without deciding the merits, where justice demands that course in order that some defect in the record may be supplied. Such a remand may be made to permit further evidence to be taken or additional findings to be made upon essential points."

## II.

The Court of Common Pleas found that the testimony introduced at the original hearings in 1941, established the right to compensation and that the 1946 hearings confirmed this conclusion. Although the 1941 hearings were meager as to what actually was said at the time the blow was struck, there was uncontradicted testimony as follows: "I heard Robert Grant say to Joe Giordano that Fred Haanken interfered with trying to make a settlement for the duties of a night man and a day man, and Fred Haanken said, 'It is not so.' He hauled off and he socked Robert Grant in the face." At the 1946 hearings there was ample evidence to establish that the petitioner had discussed with Haanken the laying off of the night man; that Haanken became "quite steamed up" about it and told him to see Joe Giordano; that Haanken followed him and struck him while he was discussing the proposed lay-off with Giordano. There was further evidence that Haanken resented the petitioner's manner of handling labor relations and had made threats of harm in the event he continued in his labor relations capacity.

Our examination of the record leads us to the same findings of fact as those made by the Court of Common Pleas. The reasonable inferences from the testimony introduced at the 1941 hearings led unavoidably to the conclusion that the striking of the petitioner was an incident of the labor-management activities which he was engaging in under the terms of his employment. The 1946 testimony supports this conclusion.

It is well settled that an assault may be deemed to be an "accident" within the Workmen's Compensation Act despite its willful or criminal nature. See *Giracelli* v. *Franklin Cleaners and Dyers, Inc.* (*Supreme Court,* 1945), 132 *N. J. L.* 590; *Gargano* v. *Essex County News Co.* (*Supreme Court,* 1943), 129 *Id.* 369; *affirmed* (*Court of Errors and Appeals,* 1943), 130 *Id.* 559. It "arises out of the employment if it ensues from a risk reasonably incident thereto." See *Geltman* v. *Reliable Linen and Supply Co.* (*Court of Errors and Ap-*

*peals,* 1942), 128 *Id.* 443, 446. It need not have been foreseen or expected so long as it was "a rational consequence from a risk connected with the employment." See *Geltman* v. *Reliable Linen and Supply Co., supra* (at *p.* 447). The risk of receiving a blow, as here, from a union officer who evidently could not control his resentment about the proposed lay-off of one of the union members or about the manner in which the petitioner was conducting the employer's labor relations was reasonably incident to the petitioner's employment and was compensable under our Workmen's Compensation Act. *Barrese* v. *Standard Silk Dyeing Co. (Supreme Court,* 1932), 10 *N. J. Mis. R.* 1290; *affirmed (Court of Errors and Appeals,* 1933), 110 *N. J. L.* 565.

### III.

The sole remaining issue is whether the 15% total awarded by the Court of Common Pleas was a proper amount under the evidence submitted. Petitioner's attending physician estimated the disability at 50%. Another physician who examined the petitioner in 1946, estimated petitioner's neurological disability at 10% to 12½%. Two physicians who testified on behalf of the respondent-prosecutor testified that there was no disability resulting from the accident despite the evidence with respect to the petitioner's headaches, dizziness and continued discomforts. Our examination of all the evidence leads us to agreement with the finding by the Court of Common Pleas that 15% total represents the extent of petitioner's disability.

The judgment of the Court of Common Pleas is affirmed.