NORMAN G. SECOR, PLAINTIFF-RESPONDENT, v. PENN
SERVICE GARAGE, DEFENDANT-APPELLANT.

Argued September 7, 1955—Decided September 27, 1955.

*Mr. Carl Kisselman* argued the cause for the appellant (*Mr. Alex P. Schuenemann, 3rd,* attorney).

*Mr. Jules J. Kelsey* argued the cause for the respondent (*Messrs. Kelsey & Kelsey,* attorneys; *Mr. Arthur S. Kelsey,* on the brief).

The opinion of the court was delivered by

JACOBS, J.   The Appellate Division, in an opinion reported at 35 *N. J. Super.* 59 (1955), reinstated an award to the employee under the Workmen's Compensation Act. There having been a dissent in the Appellate Division, the employer appealed to this court as of right under *R. R.* 1:2–1.

The plaintiff Norman G. Secor was employed as a garage attendant by the respondent Penn Service Garage. He was 22 years of age, was hired on Friday, May 1, 1953, and was severely injured on Monday, May 4, 1953. His duties included the parking of automobiles and the selling of gasoline. While he was filling a customer's gas tank, the gasoline overflowed and splashed onto his right sleeve and left trouser leg. Bernard F. Berkowitz, one of the partners doing business as Penn Service Garage, asked him to come into the office and "change his uniform into dry clothes." Secor and Berkowitz went into the office and Berkowitz showed Secor where the uniforms were and "told him that since he had gasoline on him it's very dangerous" and that he would be "very happy" if Secor changed his trousers.

Berkowitz testified that at that point Secor, saying "he wasn't afraid of that stuff," took a book of matches out, lit one with his right hand, put it close to his left leg, and instantaneously was in flames. Secor tetified that Berkowitz had told him to change his clothes, that he and Berkowitz had gone into the office and Berkowitz had told him where to get some clean clothes, and that he lit a match and "was going to reach for a cigarette" in his shirt pocket when his clothes burst into flames. He acknowledged that he had told Berkowitz that he was not "afraid of the gasoline" but he denied that he held the match close to his leg.

In due course Secor filed a petition for compensation alleging that he was severely burned and that his injury was by accident arising out of and in the course of his employment. The answer of Penn Service Garage admitted that Secor was in its employ on May 4, 1953 and "that an occurrence took place in which the petitioner was injured"; it asserted, however, that the injury was not compensable under the New Jersey Workmen's Compensation Act in that the injury sustained was " 'intentionally self-inflicted' and it is therefore denying compensation pursuant to *R. S.* 34:15–7." The Deputy Director in the Division of Workmen's Compensation, after hearing the parties, rendered an award in the petitioner's favor. He made no determination as to whether the petitioner was actually about to light a cigarette or whether his act was an impulsive one designed to impress his employer with his lack of personal fear or the absence of any real need for changing clothes. He did, however, find that the petitioner's injury was not caused by the intentional lighting of his clothes and that it was not intentionally self-inflicted within the meaning of *R. S.* 34:15–7. This finding was clearly sound under the evidence and the controlling authorities; indeed it was not questioned by the employer either in the Appellate Division or in this court. See *Belyus v. Wilkinson, Gaddis & Co.*, 115 *N. J. L.* 43, 49 (*Sup. Ct.* 1935), affirmed 116 *N. J. L.* 92 (*E. & A.* 1936). *Cf.* 1 *Larson, Workmen's Compensation Law* (1952), 453, 509.

On the employer's appeal to the County Court the award in the employee's favor was reversed. The County Court found that, although the injury was not intentionally self-inflicted and was conceded by the employer to have arisen "out of the employment," it had not arisen "in the course of the employment." In reaching its conclusion it expressly rejected the employee's story that he was about to light a cigarette. In the Appellate Division the County Court's action was set aside and the award rendered by the Workmen's Compensation Division was reinstated. Judge Clapp's opinion pointed out that the charge of intentional self-infliction of the injury had been withdrawn and that in view of the employer's concession in the County Court and the direction of the argument in the Appellate Division, it was unnecessary to deal at any length with the question of whether the injury arose "out of the employment." He first noted that the presence of gasoline on the plaintiff's clothes was attributable to his work and contributed, at least in part, to his injury. See *Cierpial v. Ford Motor Co.,* 16 *N. J.* 561, 566 (1954); *Gargiulo v. Gargiulo,* 13 *N. J.* 8, 13 (1953); *Spindler v. Universal Chain Corp.,* 11 *N. J.* 34, 39 (1952); *Sanders v. Jarka Corp.,* 1 *N. J.* 36, 41 (1948). *Cf. Green v. DeFuria,* 19 *N. J.* 290, 296 (1955). He then considered whether, under the employer's version of the incident, the injury occurred in the "course of the employment" and concluded that it did, citing the doctrine, seemingly approved in the recent opinion of Justice Oliphant in *Robertson v. Express Container Corp.,* 13 *N. J.* 342, 347 (1953), that while a "deliberate and conscious" deviation by the employee will serve to remove him from the course of his employment within the contemplation of the Compensation Act, a "momentary or impulsive" act representing an insubstantial deviation will not serve to do so. *Cf. Larson, supra,* 369, where the author states that the modern decisions tend to support the suggestion that "if the deviation be trifling and momentary it should be disregarded." On its appeal to this court the appellant attacks the soundness of the views expressed by the Appellate Division and

urges (1) that the plaintiff did not establish the essentials of his compensation claim by "a preponderance of the evidence" and (2) that the testimony established that his injury was sustained "by actions committed by him not in the course of his employment."

The Workmen's Compensation Act is remedial social legislation designed to place the costs of accidental injuries which are work-connected upon employers who may readily provide for them as operating expenses. It provides broadly that compensation shall be paid for death or injury by accident arising out of and in the course of the employment "in all cases except when the injury or death is intentionally self-inflicted, or when intoxication is the natural and proximate cause of injury." *R. S.* 34:15–7. The common law concept of liability based on fault is nowhere mentioned in the act and has no proper place in its administration; on the contrary the act is to be liberally applied as a compensation statute intended to protect employees in the event of work-related injuries notwithstanding their own negligent or even foolhardy conduct. See *Green v. DeFuria, supra,* where Justice Wachenfeld, in sustaining an award to an employee who left his place of employment to silence an annoying automobile horn, aptly remarked that it was "fundamental in the workmen's compensation law that the negligence or even the foolishness of the employee does not bar recovery when it is short of intentional or willful misconduct. *N. J. S. A.* 34:15–7." Similarly the act nowhere either in terms or purpose, embodies the common law concept of proximate causation; on the contrary it is enough if the employment is a contributory cause. See *Sanders v. Jarka Corp., supra,* where this court in sustaining an award based on a criminal assault stated flatly that the employment "need not be the sole or proximate cause of the injury" and that the statutory requirement is met if the employment is "a contributing cause to the accident" or "a necessary factor" leading to it. See also *Gargiulo v. Gargiulo, supra,* extensively discussed in *Larson, The Legal Aspects of Causation in Workmen's*

Compensation, 8 *Rutgers L. Rev.* 423 (1954). *Cf. Newell v. Moreau,* 94 *N. H.* 439, 55 *A.* 2d 476 (1947); *State Compensation Ins. Fund v. Industrial Acc. Comm'n,* 38 *Cal.* 2d 659, 242 *P.* 2d 311 (1952); *Petro v. Martin Baking Co.,* 239 *Minn.* 307, 58 *N. W.* 2d 731 (1953).

The statutory phrase "by accident arising out of and in the course of his employment" has no strict common law counterpart and courts have defined and applied it with varying liberality. In the oft-cited case of *Bryant v. Fissell,* 84 *N. J. L.* 72, 77 (*Sup. Ct.* 1913), Justice Trenchard, in sustaining an award to an injured workman, stated that a compensable accident results "from a risk reasonably incidental to the employment" and that an accident arises in the course of the employment "if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." See *Miller v. Bill Miller's Riviera, Inc.,* 21 *N. J. Super.* 112, 116 (*App. Div.* 1952); *Schultz v. Henry V. Vaughans Sons & Co.,* 24 *N. J. Super.* 492, 498 (*Cty. Ct.* 1953). In *Belyus v. Wilkinson, Gaddis & Co., supra,* Justice Heher noted that an accident arises out of the employment when the risk is "reasonably incident" thereto, and arises in the course of the employment when it occurs within the period of the employment at a place where the employee may reasonably be and while he is reasonably fulfilling the duties of the employment "or doing something incidental to it." See *Larson, supra,* 193. Notwithstanding the sweep of these judicial definitions, the court in *Hulley v. Moosbrugger,* 88 *N. J. L.* 161, 169 (*E. & A.* 1915), denied a compensation award to a non-participating victim of horse-play on the ground that his injury did not arise out of a risk reasonably incident to the employment. See also *Budrevie v. Wright Aeronautical Corp.,* 135 *N. J. L.* 46 (*Sup. Ct.* 1946), affirmed 136 *N. J. L.* 198 (*E. & A.* 1947); *Savage v. Otis Elevator Co.,* 136 *N. J. L.* 419 (*Sup. Ct.* 1948). The great weight of authority is now to the contrary; indeed the trend has been toward allowing compensation even to

participating employees where their deviations may be said to be minor and attributable to normal human tendencies which men do not wholly shed simply because they are at work. See *East Ohio Gas Co. v. Coe, 42 Ohio App.* 334, 182 *N. E.* 123 (1932); *Riesenfeld, Contemporary Trends in Compensation for Industrial Accidents, 42 Cal. L. Rev.* 531, 551 (1954). *Cf. Larson, supra,* 342; *Horovitz, Assaults and Horseplay Under Workmen's Compensation Laws, 41 Ill. L. Rev.* 311 (1946).

█ Despite occasional suggestions to the contrary it is now well settled in our State and elsewhere that an employee is not deprived of the benefits of the Compensation Act simply because he was not actually working when the accident occurred. See *Buerkle v. United Parcel Service, 26 N. J. Super.* 404, 407 *(App. Div.* 1953). He may have stopped work to have a smoke, or to get some fresh air, or to use the telephone, or to satisfy other human needs incidental to his being at his place of employment; it is clear that injuries which occur during such minor deviations are generally sufficiently related to the employment to call for compensation. See *Waskevitz v. Clifton Paper Board Co., 7 N. J. Super.* 1, 3 *(App. Div.* 1950); *Horovitz, Injury and Death Under Workmen's Compensation Laws* (1944), 112; *Larson, supra,* 297. Similarly employees may stop work to satisfy their interest in a passing parade or in a strange object or their curiosity generally; here Larson (*supra,* 369) suggests that so long as the deviation is minor it should be disregarded. As he put it:

"Along with all the other frailties of the average man—his carelessness, his prankishness, his tobacco habit, his cola habit, his inclination to rest once in a while and chat with his neighbor—there must also be expected one more: his natural human proclivity for sticking his head in mysterious openings, putting his fingers in front of fan blades, and pulling wires and pins on strange mechanical objects which he finds."

The case in which the employee stuck her head in the mysterious opening was *Bethlehem Steel Co. v. Parker,* 64

*F. Supp.* 615, 618 (*D. C. D. Md.* 1946); she was injured by a descending dumbwaiter, and the court sustained a compensation award in her favor. In the course of his opinion Judge Chesnut stressed the fact that the employee's action "was not in any sense a striking or intentional departure from her duties but at most a slight and casual one occasioned apparently by not unnatural curiosity." In *Bernier v. Greenville Mills, Inc.,* 93 *N. H.* 165, 37 *A.* 2d 5 (1944), a young textile mill employee was injured when he touched cloth in a shearing machine to see how it felt. In sustaining an award to the employee the court pointed out that the employment was "at least in part" causally related to the accident and that the employee's conduct in satisfying his curiosity was "a natural incident" of his employment. In *Miles v. Gibbs & Hill, Inc.,* 250 *N. Y.* 590, 166 *N. E.* 335 (1929), the New York Court of Appeals sustained an award in favor of a trainman who was injured when he struck a torpedo with a hammer he was carrying; and in *Pedersen v. Nelson,* 267 *App. Div.* 843, 45 *N. Y. S.* 2d 784 (1944); *Franck v. Allen,* 270 *App. Div.* 960, 61 *N. Y. S.* 2d 728 (1946); and *Derby v. International Salt Co.,* 233 *App. Div.* 15, 251 *N. Y. S.* 531 (1931), the lower New York courts similarly sustained compensation awards to employees who were injured when they foolishly tampered with objects containing explosives. A similar holding in Pennsylvania is found in *Hall v. Carnegie Institute of Technology,* 170 *Pa. Super.* 459, 87 *A.* 2d 87 (1952). In the recent case of *Jordan v. Dixie Chevrolet, Inc.,* 218 *S. C.* 73, 61 *S. E.* 2d 654, 657 (1950), Justice Taylor cited and quoted extensively from many of the cases supporting the view that "a slight deviation, caused by curiosity or other natural human act, is not necessarily a bar to compensation." There the employee, during an idle period, took hold of a tear gas bomb and not knowing what it was pulled its cotter pin with consequential injury to himself; the court sustained an award in his favor pointing out that "without the employment the injury would not have occurred" and that the employee's momentary conduct did

not remove him from the course of his employment within the liberal intendment of the state's Workmen's Compensation Act. See 31 *B. U. L. Rev.* 250 (1951); 29 *Notre Dame Law.* 687 (1954).

■ In the instant matter it seems clear that Secor's injury arose "out of his employment" within this court's holdings in *Sanders v. Jarka Corp., supra; Gargiulo v. Gargiulo, supra; Cierpial v. Ford Motor Co., supra; Green v. DeFuria, supra.* The gasoline spilled on his clothes while he was actually performing one of his employment duties and its presence was a contributory factor in the burst of flames and the ensuing injury. The spilling of gasoline on his clothes was a risk incident to his employment and but for its occurrence Secor would not have been injured; the causal relation between his injury and his employment was at least as substantial as that appearing in the *Sanders, Gargiulo, Cierpial* and *Green* cases *supra.* If Secor's story that he was about to light a cigarette is accepted then all doubts are removed as to whether his injury arose in the "course of his employment"; it is evident that his action in taking a smoke would properly be considered as an incident of his employment and would not amount to a substantial deviation removing him from its course and the protection of the Workmen's Compensation Act. See *Belyus v. Wilkinson, Gaddis & Co., supra; Waskevitz v. Clifton Paper Board Co., supra.* It seems equally evident that a like conclusion would follow if Secor was not about to take a smoke but lit the match to show his employer that there was no danger and therefore no need for changing clothes with resulting expense to his employer and some disruption of his employer's business. The evidence does not warrant any inference of deliberate disobedience of an order of his employer, cf. *Green v. DeFuria, supra; Waskevitz v. Clifton Paper Board Co., supra,* and even though his action in lighting the match for the assumed purpose be deemed grossly negligent and foolhardy it would nonetheless have been taken in the belief that it was in furtherance of the employer's interests. See *Green v. DeFuria,*

*supra.* More troublesome is the question presented by the assumption that Secor was not motivated by either of the aforestated purposes but simply lit the match in a spirit of "mock bravado." See 35 *N. J. Super.,* at *page* 61. But even here, the compelling principles underlying the modern authorities, particularly the so-called "curiosity cases," lend adequate support for the compensation award to the employee. The evidence established that, in any event, Secor's deviation from the course of his ordinary work was not an intentional abandonment of his employment but simply a "momentary or impulsive act"—it was not a "deliberate and conscious excursion" within *Robertson v. Express Container Corp., supra.* An employee is not an automaton, and, even when he is highly efficient, he will to some extent deviate from the uninterrupted performance of his work. Such deviation, if it be considered minor in the light of the particular time, place and circumstance, is realistically viewed by both the employer and the employee as a normal incidence of the employment relation and ought not in this day be viewed as legally breaching the course thereof. Fulfillment of the high purposes of our socially important and ever broadening Workmen's Compensation Act suggests this approach and nothing in the statutory terms dictates any narrower position. We are satisfied that, under any view of the testimony before the deputy director, Secor's injury was sufficiently work-connected and may fairly be said to have been an injury by accident arising out of and in the course of his employment. The Appellate Division rightly reinstated the compensation award in his favor and its judgment is:

Affirmed.

*For affirmance*—Justices HEHER, WACHENFELD, JACOBS and BRENNAN—4.

*For reversal*—Chief Justice VANDERBILT, and Justices OLIPHANT and BURLING—3.