# DAVID GRANT WALSH v. CHAS. OLSON & SONS, INC., AND ANOTHER.

172 N. W. (2d) 745.

December 5, 1969—No. 41758.

*Faricy & Green, Raymond W. Faricy,* and *David L. Peterson,* for relator.

*Jardine, Logan & O'Brien, Donald M. Jardine,* and *Alan R. Vanasek,* for respondent.

Heard before Knutson, C. J., and Murphy, Otis, Rogosheske, and Sheran, JJ.

ROGOSHESKE, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission denying compensation to employee-relator.

The issue presented is whether an employee's injury sustained on the premises of the employer during working hours arose out of and in the course of employment within the contemplation of

Minn. St. 176.021, subd. 1, where the injury-producing activity was in direct violation of specific orders by the employer and occurred at a time when the employee was not endeavoring to further the business of his employer.

In the summer of 1966, the employee, 19-year-old David Walsh, was employed by respondent Chas. Olson & Sons, Inc., a distributor of custom-made trucks and buses. As part of its business operations the employer maintained a woodworking shop equipped with power machinery, including a jointer. At the time of the injury the employee was assigned to help an older employee who was his supervisor in general "yard" work, which included such duties as disbursing parts out of the warehouse (at one end of which the power machinery was located), moving parts and supplies from place to place, keeping the warehouse in good order and clear of excess materials, and helping generally in the area of the employer's premises as he might be requested. In the early afternoon of August 26, 1966, the employee, while guiding an oak board, 11-1/2 inches by 3 inches by 5/8 inch, over the rotating blades of the jointer, severely cut two fingers of his left hand.

In support of his petition for benefits, employee, despite his acknowledgment that use of the jointer was not part of his assigned duties, sought to prove that he was engaged in authorized work. He testified that he was directed to "keep busy," and that he was using the jointer to make shavings for a janitor for use as sweeping compound. This testimony was contradicted by other witnesses. Supported by the referee's view of the testimony, the commission resolved the conflict in the testimony by specific findings that the employee was using the jointer "in violation of a specific prohibition by his employer";[1] that when injured he "was not using the machine to make sawdust shavings"; and that his planing of the board "had nothing to do with his em-

---

[1] The commission accepted the testimony that on the morning of the day of the injury the supervisor observed the employee using the jointer and in unequivocal and profane language told him to get off the jointer and stay off it.

ployment and was not in furtherance of his employer's business." The evidence overwhelmingly supports these findings.

The referee, relying on Cunning v. City of Hopkins, 258 Minn. 306, 103 N. W. (2d) 876, nevertheless awarded benefits upon the theory that "[t]he activity was nothing more than pure and simple 'horse play'" by a young, inquisitive, and naturally curious boy attracted to power equipment in his employment environment.

The commission unanimously disagreed and denied benefits. It determined that the facts of the case are controlled by cases which hold that where the injury-provoking activity of the employee is in violation of specific orders of the employer, and the activity is not accomplishing work for the employer, the employee has placed himself outside the sphere of his employment and the protection of the compensation act. Rautio v. International Harvester Co. 180 Minn. 400, 231 N. W. 214; Anderson v. Russell Miller Milling Co. 196 Minn. 358, 267 N. W. 501.

On appeal, the employee, conceding that the facts are as found by the commission, urges us to adopt the referee's determination upon his argument that the policy of the compensation act and the rationale of the Cunning case require it.

We agree that the policy of the act, as articulated in Cunning and the cases extensively reviewed in that opinion, does not bar compensation to an employee injured during working hours where he is a victim, whether participating or innocent, of pranks, horseplay, or other similar employment misconduct, however characterized, even though the injury-producing activity is found to be a deviation from assigned duties. So, also, benefits may be awarded for injury or death resulting from a work-induced assault by a fellow employee. Jolly v. Jesco, Inc. 271 Minn. 333, 135 N. W. (2d) 746. Briefly summarized, the rationale permitting an award of benefits in these situations is the recognition of the reality that such activities and resulting injuries are incidental to modern-day employment and thus consistent with the policy of the compensation act, designed as it is to shift the

burden of work injuries to the cost of industrial production as well as to eliminate the concept of fault and common-law defenses. Whether such injuries resulting from activities are work-related, as required by Minn. St. 176.021, subd. 1, is thus to be determined, not by measuring whether the act or conduct has a tendency "to serve the master's business,"[2] but rather by whether the injury resulted from conduct involving a risk or hazard of the working environment reasonably to be anticipated by the employer.[3] However, where the injury-producing conduct was in violation of a specific instruction or order of the employer, we have denied benefits (Anderson v. Russell Miller Milling Co. *supra*; Rautio v. International Harvester Co. *supra*) unless contemporaneously with the violation the employee was performing work in furtherance of his employer's business. Prentice v. Twin City Wholesale Grocery, 202 Minn. 455, 278 N. W. 895; Olson v. Robinson, Straus & Co. 168 Minn. 114, 210 N. W. 64. Although the language of these decisions draws a distinction based upon whether or not the injury-producing conduct was in furtherance of the employer's business, in the cases where benefits were denied, the factor that the injury resulted from conduct which could not be reasonably anticipated by the employer must also be considered significant.

In the case before us, however we may characterize the employee's injury-producing conduct, the facts and circumstances remain that it was in violation of a direct, timely, and unequivocal prohibition; that it occurred when the employee was not endeavoring to further the employer's business; and that it was conduct which the employer, in view of the express prohibition, could not be charged with anticipating as a risk or hazard of the employment environment. As we see it, the distinction between the employee's conduct here as compared to the employee's conduct in Cunning is not based so much on the fact that in this

[2] Matter of Leonbruno v. Champlain Silk Mills, 229 N. Y. 470, 473, 128 N. E. 711, 712, 13 A. L. R. 522.

[3] Newell v. Moreau, 94 N. H. 439, 55 A. (2d) 476.

case the employee's conduct was both expressly prohibited and devoid of aiding the employer's business (valid as those distinctions may be), as it is based on the fact that in Cunning the horseplay in which the employee participated was regarded by this court as part of the working environment and the hazard resulting in injury was one which could reasonably be anticipated by the employer. Here, after the prohibition was given, about the only effective alternative left to the employer to protect against the hazard which caused the injury was to place the jointer under lock and key.

We agree with the commission's application of Minn. St. 176.021, subd. 1, to the facts of the case, and accordingly affirm.

Affirmed.