119 N.J. Super. 20 (1972)
289 A.2d 558
FELIX DANIELLO, PETITIONER-APPELLANT,
v.
MACHISE EXPRESS CO., RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Atlantic County Court, Law Division.
Decided March 24, 1972.
As Corrected April 4, 1972.
*22 Mr. Mark A. DeMarco for appellant (Messrs. Curcio, Donio & DeMarco, attorneys).
Mr. William G. Freeman for respondent (Messrs. Freeman, Freeman & Spence, attorneys).
HORN, A.J.S.C.
Petitioner appeals from the dismissal of his claim petition by a judge of compensation. Specifically, the judge found that injuries suffered by appellant on September 16, 1969 while in the employ of respondent Machise Express Co. were not sustained in the course of his employment with it as a truck driver.
On September 16, 1969 Daniello, the employee, as usual drove to his place of employment and reported to work at 4:30 A.M., wearing a uniform furnished by himself. There he received his assignment, got into his tractor-trailer truck, which was empty at that time, and drove to the Mobil Oil Company refinery in Paulsboro, New Jersey. He checked in at the gate and then pulled his truck underneath the rack in order to load it with jet fuel. In accordance with the custom at the depot, he loaded his own truck. After arriving at the platform he hooked up the conducting pipe to the trailer tank aperture. The fuel emerged with great force and splashed up, permeating his uniform and body with fumes.
After the tank was filled he sealed it and drove to McGuire Air Force Base, where the fuel was conducted by means of a pipeline into fuel storage tanks. On this particular day he returned to Paulsboro and got another load of the jet fuel. Again, while loading his tank, fumes lodged on his clothing and body.
*23 He then took the second load of fuel back to McGuire Air Force Base and unloaded it in the same manner. When this was completed he returned to the trucking yard of respondent in Hammonton. It was now the end of his working day and, as usual, he refueled his tractor and parked the truck. He then went into the garage, spoke briefly with a fellow employee and told him that he was going home. As there was no necessity for him to check out in any office, and there being no facilities to change clothing or to shower, he got into his car, which was parked in a space in the employer's yard, and drove about 1 1/2 miles to his home.
When he arrived home he parked his car and noticed his eight-year-old son taking some trash out to the backyard to place it in a drum-type incinerator to be burned at a later time. He yelled to his son that he would burn it, since he never allowed his son to burn the trash. He then struck a match and immediately thereafter "exploded." The fire was caused by the match igniting the fumes of jet fuel which had lodged on his clothing and body. As a result of this explosion, his shirt and some other articles of clothing caught fire, causing petitioner to receive injuries for which he sought compensation.
The sole issue presented in this appeal is whether the employee sustained a compensable accident when he was burned. Did this accident arise out of and in the course of his employment?
The judge below denied compensation on the ground that the injuries were caused by an intervening direct force totally unrelated to the employment. He felt, also, that the fact that the injury occurred at the employee's home made the liability of the employer even more remote. He concluded that the risk was not reasonably incidental to the employment.
I disagree with his conclusions. When an injury occurs under prescribed conditions, compensation must be awarded upon broader and more humane rules. To accomplish the purposes for which the compensation law was *24 enacted, the court will give its provisions the most liberal construction that it will reasonably bear in favor of the injured employee in order to avoid harsh results to the worker and his family. Fantasia v. Hess Oil and Chemical Corp., 110 N.J. Super. 360 (Cty. Ct. 1970); Silagy v. State, 101 N.J. Super. 455 (Cty. Ct. 1968). The construction given the Workmen's Compensation Act below was unduly restricted.
The standard to be applied in determining whether an accident arose out of and in the course of the worker's employment is always reasonableness. Cavalcante v. Lockheed Electronics Co., 85 N.J. Super. 320 (Cty. Ct. 1964); aff'd 90 N.J. Super. 243 (App. Div. 1966). The phrase "arising out of and in the course of his employment" in the Workmen's Compensation Act (N.J.S.A. 34:15-1) has been given a broad interpretation, since the act was intended to place the cost of accidental injuries which are work-connected upon employers, who may provide for them as operating expenses. Renshaw v. United States Pipe & Foundry Co., 30 N.J. 458 (1959); Tocci v. Tessler and Weiss, Inc., 28 N.J. 582 (1959).
An accident "arises out of employment" when in some manner it is due to the risk reasonably incidental to the employment, if the employment is a contributing cause of the accident resulting in the injury, and if the employment is a necessary factor leading to the accident, even though the employment is not the sole or proximate cause of the injury. Hammond v. Great Atlantic and Pacific Tea Co., 56 N.J. 7 (1970); Tocci v. Tessler and Weiss, Inc., supra; Sanders v. Jarka Corp., 1 N.J. 36 (1948).
The act does not embody the common law concepts of either fault or proximate cause; it is enough if the employment is a contributing cause of disability. Reilly v. Weber Engineering Co., Inc., 107 N.J. Super. 254 (Cty. Ct. 1969); Wexler v. Lambrecht Foods, 64 N.J. Super. 489 (App. Div. 1960); Crotty v. Driver Harris Co., 49 N.J. Super. 60 (App. Div. 1958); Secor v. Penn Service Garage, 35 N.J. *25 Super. 59 (App. Div. 1955), aff'd 19 N.J. 315 (1955); Fenton v. Margate Bridge Co., 24 N.J. Super. 450 (App. Div. 1953).
To be within the Workmen's Compensation Act the injury must be causally connected to the employment. There must be a causal connection between the conditions under which the work is required to be done and the resulting injury. Dudley v. Victor Lynn Lines, Inc., 32 N.J. 479 (1960); Hall v. Doremus, 114 N.J.L. 47 (E. & A. 1934). The risk, if reasonably incident to employment, need not be foreseeable or expected, as long as it is a natural consequence from a risk connected with the employment. Silagy v. State, supra; Gargiulo v. Gargiulo, 13 N.J. 8 (1953); Sanders v. Jarka Corp., supra; Grant v. Grant Casket Co., 137 N.J.L. 463 (Sup. Ct. 1948); Geltman v. Reliable Linen and Supply Co., 128 N.J.L. 443 (Sup. Ct. 1942).
An employee is not deprived of benefits of the Workmen's Compensation Act simply because he was not actually working when the accident occurred, as long as the injury arises out of a risk which is reasonably incidental to the conditions and circumstances of the employment. Reilly v. Weber Engineering Co., supra; Rice v. Pharmaceuticals, Inc., 65 N.J. Super. 579 (App. Div. 1961); Buerkle v. United Parcel Service, 26 N.J. Super. 404 (App. Div. 1953)
The question presented is one of first impression in New Jersey. There appear to be no reported precedents in our State dealing directly with this particular factual complex.
Respondent's primary contention is that the accident did not arise "in the course of" the employment. Judge Goldmann, in Meo v. Commercial Can Corp., 80 N.J. Super. 58 (App. Div. 1963), related the judicial evolution of that phrase from the definition adopted in Bryant, Adm'x v. Fissell, 84 N.J.L. 72, 77 (Sup. Ct. 1913), to the more recently adopted the so-called "going and coming" rule.
Meo sustained payment of compensation to an employee who was attacked at his home during a strike. The employee *26 was on 24-hour duty and under express direction as plant superintendent to keep the plant going at all costs. The fact that he was on 24-hour duty was a major factor on the basis of which the court justified holding that even though the assault took place at his home, the injury was compensable. For this reason it does not meet the issue presented in the instant case.
In 1 Larson, Workmen's Compensation Law, § 29.21 at 452.102, work-connected assault cases where the assault takes place outside of the working hours are discussed. Larson supports the view of some courts that compensation should be paid if the origin of the injury arose out of and in the course of the employment, notwithstanding the assault took place when and where the employee was not performing some service for his employer or was "going or coming."
Larson, in § 29.22 at 452.106 refers to two cases which he feels were decided erroneously because of the narrow and restrictive meaning accorded to the respective workmen's compensation acts respectively applied. In one, compensation was denied to an employee who was injured while shaving at home as the result of the explosion of a dynamite cap left in his pocket from work at his employer's plant. Gill v. Belmar Constr. Co., 226 App. Div. 616, 236 N.Y.S. 379 (N.Y. App. Div. 1929).
In the other a riveter, during the course of his employment, was subject to needle-pointed metal shavings becoming lodged in his hair, clothing and eyebrows. The employer provided no place to change clothes and no facilities for removing these particles. The employee left for home with some of these shavings still clinging to him, and when he was almost home, about 15 minutes after the close of working hours, a sharp steel sliver fell from his eyebrow into his eye, causing severe injury. The court declined compensation. American Motorists Insurance Co. v. Steel, 229 S.W.2d 386 (Tex. Civ. App. 1950).
*27 The judge of compensation below relied partly on these two precedents in disallowing recovery by the employee. Thus, he adopted the reasoning of cases which not alone do not accord with present concepts, but represent the earlier strict reasoning of courts which failed to adhere to the fundamental objects of workmen's compensation laws.
Larson observed that the common element in these cases is the fact that the originating cause of the injury is something that occurs entirely within the time and place limits of the employment. "The time-bomb, so to speak, is constructed and started ticking during working hours; but it happens to go off at a time and place removed from the employment."
He suggests forcibly that the interpretation of Judge Cardozo in Field v. Charmette Knitted Fabric Co., 245 N.Y. 139, 156 N.E. 642 (N.Y. Ct. App. 1927), that the injurious incident "from origin to ending must be taken to be one," should be adopted.
In Joy v. Florence Pipe Foundry Co., 64 N.J. Super. 13 (App. Div. 1960), the court affirmed an award of compensation for permanent injuries resulting from cerebral hemorrhage precipitated by activities while at work, although the hemorrhage actually took place in the employee's hotel room on the morning following the last working day.
The employer contended that since the stroke occurred in the employee's hotel room after a night's sleep, it did not arise in the course of his employment. In rejecting this contention, the court gave weight to the fact that the employee was living away from home because of the project and that a travelling employee is considered to be continually at work. However, it also stated:
Secondly, we deem it necessary to point out the error inherent in a too strict construction of the clause, `in the course of his employment.' The primary inquiry should always be whether the injury for which compensation is sought is work-connected; the point in time at which that injury manifests itself should not be determinative. If the contributing or causative factors occur in the course of the employment, it is not necessary that the consequent disability manifest itself *28 at that time. * * * Dean Larson accurately comments that: `* * * in Workmen's Compensation the controlling event is something done to, not by, the employee, and since the real question is whether this something was an industrial accident, the origin of the accident is crucial, and the moment of manifestation should be immaterial.' [Larson, supra, § 29.22 at 449; emphasis added]
In Dwyer v. Ford Motor Co., 36 N.J. 487 (1962), the employee, already suffering coronary insufficiency, did laborious work at his employer's plant and upon returning home suffered a fatal heart attack. The Supreme Court held that the employment strain was a major contributing factor in producing the occlusion from which he died, for which his dependents were entitled to compensation under the statute.
Thus, it appears that our courts have already adopted the "origin" thesis espoused by Larson. The weight of reason supports this interpretation.
In Secor v. Penn Service Garage, supra, an employee spilled some gasoline on his trousers and was told to change them. In a foolhardy manner and, of course, exercising poor judgment, he struck a match to indicate that he was not in a dangerous situation. As a result, his uniform went up in flames and he was burned. In allowing compensation the court held that the injuries were "from a risk reasonably incidental to the employment. * * *"
The difference between the facts of Secor and the case before me is slight. In the former the match was struck at the place of employment; in the latter it was struck a short time later after the employee left his place of employment. Some might argue with conviction that the foolhardy act of the employee in attempting to demonstrate the lack of danger was an act so far outside the employment that he was entitled to no compensation.
In the instant case the act of striking the match was the result of sheer forgetfulness or lack of the appreciation of danger only.
In any event, the recovery in one and the lack of recovery in the other can only be distinguished on factitious or synthetic *29 grounds which may only be considered as illusory and without substance. Certainly the denial of compensation runs counter to the holdings in Joy and Dwyer.
Accordingly, the dismissal of the petition is reversed and the record is remanded to the Workmen's Compensation Division for the purpose of determining the amount of compensation to which petitioner is entitled and making this as well as such other awards as are required by the Act.