Stephen H. GRABOWSKI, Jr., and Connie Grabowski, his wife Plaintiffs Below–Appellants,

v.

William MANGLER, David Smith and Joseph Ziemba, Defendants Below–Appellees.

No. 65, 2007.

Supreme Court of Delaware.

Submitted: Aug. 28, 2008.
Decided: Sept. 9, 2008.

58. *Green v. Sussex County,* 668 A.2d 770, 773 (Del.Super.), *aff'd,* 667 A.2d 1319 (Del.1995)

(Table).

Gary S. Nitsche, Esquire (argued) and W. Christopher Componovo, of Weik, Nitsche, Dougherty & Componovo, Wilmington, Delaware, for appellants.

Nancy Chrissinger Cobb, Esquire (argued), of Chrissinger & Baumberger, Wilmington, Delaware, for appellee David Smith.

Robert K. Pearce, Esquire (argued) and Thomas R. Riggs, Esquire, of Ferry, Joseph & Pearce, P.A., Wilmington, Delaware, for appellee Joseph Ziemba.

Joseph A. Gabay, Esquire, Wilmington, Delaware; Wayne A. Marvel, Maron Marvel Bradley & Anderson, P.A., Wilmington, Delaware, for appellee William Mangler.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice.

Plaintiff–Appellant Stephen H. Grabowski sustained injuries arising from horseplay at his job site. After claiming and receiving workers' compensation benefits,

Grabowski brought a third party negligence action against the co-employees who were involved in the horseplay, defendant-appellees William Mangler, David Smith, and Joseph Ziemba ("Appellees"). Mangler, Smith, and Ziemba filed motions for summary judgment, which the trial judge granted. In Grabowski's first appeal, we adopted the Larson "course of employment" test as a basis to determine whether a co-employees' conduct constituted horseplay of such a character that it was outside the course and scope of employment.[1] We remanded to the trial judge to analyze the underlying facts under the Larson test to determine as a matter of law whether appellees' actions constituted horseplay outside the course and scope of employment. On remand, the trial judge applied the four-factor Larson test and found that Appellees' conduct occurred within the course and scope of employment, and granted summary judgment for Appellees. We agree and affirm.

## I. Facts

Grabowski and Appellees all worked as pipefitters and welders for J.J. White ("White") at the Delaware City Oil Refinery job site. White had rules forbidding horseplay at their job sites. Despite these rules, White's employees, including Grabowski, would often engage in horseplay and practical jokes. These jokes ranged from taping lunch boxes shut and filling hard hats with water to duct-taping employees and setting a napping employee's pants on fire.[2] The duct-taping incident involving Grabowski was at least the second such occurrence.[3]

On October 16, 2000, Appellees called Grabowski over to the bathroom, and in furtherance of the joke, wrapped him, from ankles to shoulders, in duct tape. Grabowski suffered physical injuries and post-traumatic stress and has since received over $300,000 in workers' compensation for his injuries. He filed a complaint in Superior Court against Appellees in tort, seeking compensatory damages. Applying 19 *Del. C.* § 2304,[4] the trial judge determined that workers' compensation was Grabowski's exclusive remedy and granted summary judgment for Appellees. Grabowski appealed.

In *Grabowski I*, we held that workers' compensation "may be an exclusive remedy in some instances of co-employee horseplay if the co-employee's actions are within the course and scope of employment."[5] However, where a coemployee's actions "may be so unreasonable and so unexpected that it is not within the co-employee's course and scope of employment," a claimant may bring a private tort action against his co-employees.[6] In so doing, we adopted Professor Larson's four-factor test as the basis for this determination and remanded the case to the trial judge to apply the test. The trial judge did so, and found, as a matter of law, that the horse-

---

1. *Grabowski v. Mangler (Grabowski I),* 938 A.2d 637, 642 (Del.2007).

2. (Smith Supp. Memo Ex. A at JZ–15–17; WM–24; BN–2; DM–30).

3. (*Id.* at JZ–15; WM–21; DM–29). Another employee recalled a similar duct-taping incident that took place in 1968. (BN–3). But duct-taping was only one of several forms of horseplay in which White employees would engage.

4. 19 *Del. C.* § 2304 provides that:

Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

5. *Grabowski I,* 938 A.2d at 642.

6. *Id.*

play at issue was within the course of employment under the Larson analysis. The trial court granted summary judgment in favor of the appellees. This appeal followed.

## II. Discussion

 Grabowski argues that on remand the Superior Court misapplied the Larson test. We review appeals from motions for summary judgment *de novo*.[7] When the evidence shows no genuine issues of material fact in dispute, the burden shifts to the non-moving party to demonstrate that there are genuine issues of material fact in dispute that must be resolved at trial.[8]

 This appeal from a Delaware trial court's application of the Larson "course of employment" test presents a matter of first impression. In *Grabowski I*, we recognized that the Delaware Workers' Compensation Act (the Act) provides the exclusive remedy against the employer for employees who are injured on the job from acts "arising out of and in the course and scope of employment."[9] However, the Act does not bar claims against third party tortfeasors when the third party is "other than a natural person in the same

employ" as the injured employee.[10] This Court has previously interpreted 19 *Del. C.* § 2363(a) to "exclude co-employees from the category of 'third persons' who may be sued by an injured employee, and thus to bar common law negligence suits against co-employees by fellow employees or by subrogated employees in connection with compensable injuries."[11] Thus, co-employees retain their status as co-employees and immunity (as provided under 19 *Del. C.* § 2363) attaches "only when the co-employee is acting in the course of employment."[12]

 We also explained in *Grabowski I* that "[t]here are some instances ... where co-employees' horseplay may be so unreasonable and so unexpected that it is not within the co-employees' course and scope of employment,"[13] and the cause of action is not barred under 19 *Del. C.* § 2363.[14] To analyze which of these instances may be "so unreasonable and so unexpected" when an instigator is involved, we adopted Professor Larson's four-factor test as the basis for the determination.[15] As Professor Larson explains, the "course of employment test" provides a simple rational basis for a court to apply whenever the controversy arises "from the nature of a

7. *Id.* at 641; *Williams v. Geier,* 671 A.2d 1368, 1375 (Del.1996).

8. *Grabowski I,* 938 A.2d at 641; *Moore v. Sizemore,* 405 A.2d 679, 681 (Del.1979).

9. *Id.* at 641; 19 *Del. C.* § 2304.

10. 19 *Del. C.* § 2363; *Grabowski I,* 938 A.2d at 641.

11. *Groves v. Marvel,* 213 A.2d 853, 855 (Del. 1965).

12. 6 Larson's Workers' Compensation Law § 111.03[3], at 111–13.

13. *Grabowski I,* 938 A.2d at 642.

14. *See Groves v. Marvel,* 213 A.2d 853, 856 (Del.1965) ("The cloak of the immunity Stat-

ute covers the defendant if the act complained of was one which the defendant might reasonably do, or be expected to do, within a time during which he was employed and at a place where he could reasonably be during that time—even though outside his regular duties.").

15. *Id.* at 642–44. Here, "Grabowski was not a willing and active participant in the horseplay engaged in by Defendants on the date of the incident in question." *Id.* at 643. *But see also* 2 Larson's Workers' Compensation Law § 23.01 n. 1 at 23–2 (noting that in *Prows v. Industrial Commission of Utah,* 610 P.2d 1362 (Utah 1980), the Supreme Court of Utah adopted the Larson test in holding that a horseplay participant could recover if by ordinary course of employment standards his con-

source of injury *to* the claimant," thus avoiding an outright denial of third-party tort liability based on an analysis of voluntary or non-voluntary participation by the claimant.[16] Because Grabowski was a non-participant in the horseplay, we remanded to the Superior Court to apply the *Larson* factors to the conduct of his co-employees and determine whether their horseplay constituted conduct outside the course and scope of employment.[17] If the balance of those factors lead to the conclusion that the horseplay was indeed outside of Appellees' course of employment, then the exclusivity provision of the Delaware Workers' Compensation Act would not apply.[18]

▮ Under the *Larson* test, the trial judge must examine the co-employees' conduct and consider four factors in determining whether the initiation of horseplay is a deviation from the course of employment are: (1) the extent and seriousness of the deviation; (2) the completeness of the deviation (i.e., whether it was co-mingled with the performance of duty or involved an abandonment of duty); (3) the extent to which the practice of horseplay had become an accepted part of the employment; and (4) the extent to which the nature of the employment may be expected to include some horseplay.[19] Having applied these factors here, we agree with the Superior Court that Appellees' act of horseplay occurred in the course and scope of their employment at White.

As for the first two factors, the analysis requires examination of the employment environment and the extent to which the horseplay required dropping of active duties.[20] The focus should be on the seriousness of the work departure by the instigators. In that respect, the material facts are undisputed. As found by the Superior Court, none of the appellees abandoned their duties "sufficiently completely and extensively" to effectuate the prank because there were no active duties to abandon.[21] It is undisputed that Mangler and Smith were on downtime and the dispute over whether Ziemba was also on downtime is immaterial. Regardless of whether Ziemba was working and took a coffee break or whether Mangler and Smith asked him to step away during a lull in work to participate in the prank, the fact remains that during the downtime or break there was no work to be done. As the Superior Court recognized, "all parties admit that there was no work to be done during the time in question, even though they were required to remain at the job site." As a result, the first two factors weigh in favor of Appellees.[22]

The third factor also weighs in favor of Appellees. There is no dispute that despite White's rules forbidding horseplay at their job sites, horseplay had become part of Appellees' working environment. Therefore, we agree with the Superior

duct did not amount to a substantial deviation).

16. *See* 2 Larson's Workers' Compensation Law § 23.07[1], at 23–14–23–14. Larson also recognizes that applying the workers' compensation test is appropriate because "[b]y adopting the compensation test, a court has at hand a ready-made body of cases with which to dispose of the most borderline situations." 6 Larson's Workers' Compensation Law § 111.03[3], at 111–15.

17. *Grabowski I,* 938 A.2d at 644.

18. *Id.* at 639, 644; 19 *Del. C.* § 2304.

19. *Grabowski I,* 938 A.2d at 642.

20. *See id.* (quoting Professor Larson's analysis of the first two factors); 2 Larson's Workers' Compensation Law § 23.07[5], at 23–27.

21. *Grabowski v. Mangler,* 2007 WL 4577576, at *5–6 (Del.Super.).

22. *Id.* at *5.

Court that horseplay had become an accepted part of the parties' employment.[23]

Finally, there is no material dispute of fact that with horseplay being an accepted part of the workplace environment, the nature of the employment was expected to include some horseplay. Professor Larson notes that "the particular act of horseplay is entitled to be judged according to the same standards of extent and duration of deviation that are accepted in other fields, such as resting, seeking personal comfort, or indulging in incidental personal errands."[24] The record shows that the types of horseplay engaged in ranged from taping lunch boxes shut and filling hard hats with water to duct-taping employees and setting a napping employee's pants on fire.[25] The incident involving Grabowski was at least the second duct-taping occurrence.[26] It is reasonable to find that the duct-taping incident at issue was in line and "not 'so far removed' with the typical horseplay of employees at this job site."[27] Thus, the fourth factor weighs in favor of Appellees as well.

In sum, the duct-taping prank in this case was executed quickly without a significant abandonment by Appellees of their duties. Moreover, notwithstanding the employer's rules, horseplay was informally accepted and commonplace in their work environment. This particular incident, though unfortunate, was consistent with the horseplay typical at White. Under the circumstances, the exclusionary provisions of 19 Del. C. § 2363 limit Grabowski's remedy to compensation under the Workers' Compensation Act. Accordingly, summary judgment was proper.[28]

## III. Conclusion

The judgment of the Superior Court is **AFFIRMED.**

---

23. *Id.* at *8.

24. *2 Larson's Workers' Compensation Law* § 23.07[1], at 23–14.

25. (Smith Supp. Memo Ex. A at JZ–15–17; WM–24; BN–2; DM–30).

26. (*Id.* at JZ–15; WM–21; DM–29). Grabowski argues that there is a conflicting question of fact as to how the other employees were duct-taped. (Supp. Reply Mem. at 3 n. 1). But in making this point Grabowski necessarily concedes that prior duct-taping incidents had taken place.

27. *Grabowski v. Mangler*, 2007 WL 4577576, at *7 (Del.Super.).

28. *See Mitchell v. Sanborn*, 536 N.W.2d 678, 686 (N.D.1995) (reversing final judgment following a bench trial because facts as they applied to the Larson test were "not a sufficiently substantial deviation from his course of employment so as to transform him from a co-employee to a third-person tortfeasor"); *Phillips v. John Morrell & Co.*, 484 N.W.2d 527, 531 (S.D.1992) (affirming final judgment upholding a workers' compensation claim because the Larson test indicated the plaintiff's horseplay "was not a substantial deviation from his employment and therefore [his] injury [was] 'out of' and in the course of his employment . . .").