ORDER
This 9th day of March 2009, it appears to the Court that:
(1) Plaintiff-Appellant Phillip Sammons appeals the Superior Court's grant of summary judgment to Defendant-Appellees Lisa M. Andersen and Betts Betts, P.A., now doing business as Betts Abram ("Betts"). Sammons contends that the trial judge erred as a matter of law because the existence of genuine issues of material fact prevented summary judgment. We find no merit to Sammons' argument and affirm.
(2) Sammons and Lisa Wentworth married on November 12, 1994. Before their marriage, the couple entered into an Antenuptial Agreement drafted by the law offices of Cordrey Clark, P.A., and dated September 21, 1994. In the agreement, Wentworth, inter alia, waived and released all statutory and common law rights as a spouse in Sammons' property. Wentworth also gave up any right to any appreciation in the value of the property owned separately during the marriage. The Antenuptial Agreement provided that it could not be "amended or revoked except by an instrument in writing, signed by the parties and mutually acknowledged, expressly modifying or revoking the provisions hereof." In paragraphs 10 and 11 of the agreement, both parties acknowledged that "[a]ll matters embodied herein, as well as all questions pertinent thereto, have been fully and satisfactorily explained . . .;" that they had "given due consideration to such matters and questions;" and that they "clearly understand[] and consent[] to all the provisions hereof. . . ."
(3) Andersen first represented Wentworth in 1999 in a Family Court matter involving Wentworth's former husband. At that time, Betts employed Andersen. At the conclusion of the Family Court matter, both Sammons and Wentworth asked Anderson to prepare revised Wills, Powers of Attorney, and a Modification to the Antenuptial Agreement.
(4) On or about June 15, 2001, Sammons, Wentworth, and Andersen met to sign the revised documents. Instead of signing a Modification of Antenuptial Agreement as drafted, Sammons and Wentworth signed a Revocation of Antenuptial Agreement Entered By the Parties on September 21, 1994 (the "Revocation"). The Revocation provides, in its entirety:
REVOCATION OF ANTENUPTIAL AGREEMENT ENTERED BY THE PARTIES ON SEPTEMBER 21, 1994
 THIS REVOCATION of Antenuptial Agreement entered by the Parties September 21, 1994, is made this 15 day of June, 2001, by and between PHILLIP H. SAMMONS (hereinafter referred to as "Phillip"), of Sussex County, Delaware, and LISA SAMMONS (hereinafter referred to as "Lisa"), of Sussex County, Delaware.
 WHEREAS the Parties positions and property has changed in form and title so substantially since the Antenuptial Agreement was entered into by the Parties on September 21, 1994, they hereby Revoke and Rescind that Agreement in its entirety. In executing this Agreement they understand that their rights and obligations to one another derived by virtue of their marriage are hereby reinstated in full as if the Antenuptial Agreement of September 21, 1994 were never entered.
 This writing/revocation does and is intended to comply with the specific terms set forth in paragraph 12 of the Antenuptial Agreement entered by the parties on September 21, 1994. This document represents an instrument in writing signed by the parties and mutually acknowledged, expressly revoking the provisions of the aforesaid agreement.
 This revocation shall take effect immediately upon its execution by LISA and PHILLIP[1]
(5) Sammons and Wentworth separated in January 2005 and divorced on November 16, 2005. Wentworth exclusively occupied the couple's former residence until July 31, 2005. During this time, the Revocation remained in a safe at the residence until Wentworth vacated the home and removed the safe's contents. On May 11, 2006, Wentworth provided Sammons a copy of the Revocation as part of the pending Family Court litigation related to their ancillary property division. On January 11, 2007, Sammons filed a motion to set aside the Revocation in the Family Court.
(6) On October 16, 2007, Sammons filed this action in the Superior Court against Andersen and Betts. Sammons sought damages for Andersen's alleged negligence in providing legal services to him on June 15, 2001. Sammons stated in his Complaint that he did not recall the nature and extent of the Revocation until he received a copy on May 11, 2006. He also testified during his deposition that he did not know or remember any conversation with Andersen about the Revocation before signing it.
(7) Betts and Andersen filed motions to dismiss on November 12 and 13, 2007, respectively. The defendants argued that, because six years lapsed between their alleged negligence and the date of suit, Delaware's three year statute of limitations barred the action. On January 3 and 4, 2008, Sammons responded to the motions to dismiss, interjecting arguments and documents outside the initial Complaint, including an affidavit signed by Sammons on January 3, 2008. In that affidavit, Sammons stated that Andersen did not advise him to obtain counsel and did not explain the Revocation to him. Sammons also stated in the affidavit that he graduated high school but did not understand the terms "modification," "rescission," or "life estate." He claimed that the legal documents "did not accurately reflect [his] desires as to property distribution." In response, Andersen asserted that she conducted "extensive consultation" with Sammons and that both Sammons and Wentworth asked her during the June 15, 2001 meeting to revoke rather than to modify the Antenuptial Agreement. The trial judge rejected Sammons January 3, 2008 affidavit as a "sham affidavit."
(8) On March 27, 2008, the trial judge heard oral argument on the motions to dismiss. At the conclusion of oral argument, the trial judge asked the parties whether he could render his decision as a ruling on a motion to dismiss or whether he needed to decide the matter as a motion for summary judgment because of the expanded record. During an April 1, 2008 teleconference, the parties agreed to convert the motion to one for summary judgment.
(9) On June 24, 2008, the trial judge rendered his oral decision, and that same day provided a written order granting summary judgment in favor of Andersen and Betts. The trial judge concluded that the applicable statute of limitations barred Sammons' claims. This appeal followed.
(10) Sammons contends that the trial judge erred as a matter of law by granting summary judgment because a genuine issue of material fact existed about whether he knew of the nature and legal implications of the Revocation, a predicate to placing him on notice that he had suffered an injury. Sammons also argues that the court's finding that his January 3, 2008 affidavit was a "sham affidavit" violates the court's scope of review on summary judgment to view all disputed facts in a light most favorable to the nonmoving party.
(11) "We review a trial judge's grant of summary judgmentde novo to determine whether, viewing the facts in the light most favorable to the nonmoving party, the moving party has demonstrated that there are no material issues of fact in dispute and that the moving party is entitled to judgment as a matter of law."[2] "When the evidence shows no genuine issues of material fact in dispute, the burden shifts to the non-moving party to demonstrate that there are genuine issues of material fact in dispute that must be resolved at trial."[3]
(12) The three year statute of limitations set forth in 10Del. C. § 8106 governs legal malpractice actions in Delaware.[4] A claim accrues and the three year period begins to run at the time of the alleged malpractice.[5]
Ignorance of the facts does not act as an obstacle to the operation of the statute under Delaware law.[6] We recognize, however, a limited "discovery exception" to the rigid application of the statute of limitations. The three year period is tolled "where the negligence was inherently unknowable by a blamelessly ignorant plaintiff."[7] If this exception applies, the statute of limitations does not begin to run until the "discovery of facts `constituting the basis of the cause of action or the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery' of such facts."[8]
(13) Sammons concedes that he filed the underlying complaint more than six years after Sammons executed the Revocation on June 15, 2001. Thus, his ability to survive the defendants' motions for summary judgment rests on the applicability of the discovery exception to provide a safe harbor. Therefore, the only relevant issue of fact in this case is whether Sammons was a blamelessly ignorant plaintiff who suffered an inherently unknowable injury, where no observable factors existed that would have placed a layman on notice of a problem.
(14) Sammons argues that he did not read or understand the Revocation and that Andersen did not explain the document to him in detail. He claims that as a mere high school graduate, untrained in the law, the terms "modification," "rescission," and "life estate" were beyond his comprehension. He contends that he only realized the adverse implications of the Revocation when Wentworth produced a copy on May 11, 2006. At that point his lawyer explained it to him. We need not determine whether these allegations contained in the January 3 affidavit were part of a "sham affidavit" because even accepting all of the allegations as true, Sammons cannot benefit from the discovery exception.
(15) It is well settled in Delaware that a person is bound by the details of a document he signed even if he failed to inform himself of the details.[9] Here, the Revocation's title states that it is a "REVOCATION OF ANTENUPTIAL AGREEMENT ENTERED BY THE PARTIES ON SEPTEMBER 21, 1994." Although Sammons now asserts on appeal that he did not understand the meaning of the word "revocation," he did not fairly present this argument to the trial judge. Even if he had, we find that it is reasonable to assume that a layman of ordinary intelligence would understand, at a minimum, that "revocation," means "the act of recalling or taking back," even if he would not understand the legal implications of the term.[10] Thus, even a cursory glance would reveal to a layman of ordinary intelligence that the Antenuptial Agreement was "taken back," even if he did not understand the legal effect. Moreover, the brief document continues: "In executing this Agreement, [the Parties] understand that the rights and obligations to one another derived by virtue of their marriage are hereby reinstated in full as if the Antenuptial Agreement ofSeptember 21, 1994, were never entered." Accordingly, we conclude that the Revocation itself is an observable fact that placed Sammons on notice.
(16) We find no merit to Sammons' argument that he reasonably relied on Andersen's alleged misrepresentation that the Revocation expressed his desire to give Wentworth a life estate. Sammons cannot claim misrepresentation when the language is easily discernible and comprehensible to any layperson because he cannot claim to have justifiably relied on the alleged misrepresentation.[11] The recipient of the false information is "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation, the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation."[12] Where, as here, a layman of ordinary intelligence could readily discern and comprehend the import of the Revocation, Sammons cannot rely on Andersen's alleged misrepresentation and the trial judge correctly granted summary judgment.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
[1] All references in the document to "Antinuptial" have been changed to "Antenuptial."
[2] Estate of Rae v. Murphy, 956 A.2d 1266, 1269-70
(Del. 2008) (quotations omitted).
[3] Grabowski v. Mangler, 956 A.2d 1217, 1220 (Del. 2008); see also Moore v. Sizemore, 405 A.2d 679, 681
(Del. 1979).
[4] 10 Del. C. § 8106. The statute applies,inter alia, to all actions to recover damages caused by an injury unaccompanied by force and provides that no such action "shall be brought after the expiration of 3 years from the accruing of the cause of such action. . . ."
[5] See Oropeza v. Maurer, 860 A.2d 811, 2004 WL 2154292, at *1 (Del.) (Table); accord HealthTrio, Inc. v.Margules, 2007 WL 544 156, at *7 (Del.Super.).
[6] Coleman v. Pricewaterhousecoopers, LLC.,854 A.2d 838, 842 (Del. 2004); Oropeza, 2004 WL 2154292, at *1; accord HealthTrio, 2007 WL 544156, at *7.
[7] Wal-Mart Stores v. AIG Life Ins. Co.,860 A.2d 312, 319 (Del. 2004); Coleman, 854 A.2d at 842;see also Isaacson, Stolper Co. v. Artisan's Sav.Bank, 330 A.2d 130 (Del. 1974); Layton v. Allen,246 A.2d 794 (Del. 1968); Mastellone v. Argo OilCorp., 82 A.2d 379 (Del. 1951).
[8] Coleman, 854 A.2d at 842 (quoting Becker v.Hamada, Inc., 455 A.2d 363, 356 (Del. 1982)).
[9] See, e.g., Kaufman v. C.L. McCabe Sons,Inc., 603 A.2d 831, 835 (Del. 1992); Graham v. StateFarm Mut. Auto. Ins. Co., 565 A.2d 908, 913 (Del. 1989).
[10] See MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1995).
[11] In Delaware, to demonstrate a claim of fraud, a party must demonstrate:
 1) a false representation, usually one of fact, made by the defendant;
 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth;
 3) an intent to induce the plaintiff to act or to refrain from acting;
 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and
 5) damage to the plaintiff as a result of such reliance.
See Lord v. Souder, 748 A.2d 292, 402 (Del. 2000).
[12] Restatement (Second) of Torts § 541 cmt. a;accord, e.g., Tekstrom v. Salva, 2006 WL 2338050, *11 (Del.Super.Ct.) (applying Section 541); Durnan v.Manallo, 2004 WL 326924, at *6 (Del. Com. Pl.) (applying Section 541); Ward v. Hildebrand, 1196 WL 422336, at *4 (Del.Ch.) (applying Section 541).